### HART et al. v. HARDMAN.

No. 19583. Opinion Filed Sept. 16, 1930.

W. C. Wood, for plaintiffs in error.

C. M. Threadgill, J. O. Whiteside, U. M. Baughman, B. C. Logsdon, and Allen & Jarman, for defendant in error.

DIFFENDAFFER, C. This is an action brought by defendant in error, hereinafter referred to as plaintiff, against plaintiffs in error, hereinafter referred to as defendants, to quiet title to 200 acres of land in Seminole county.

Plaintiff, in his petition, alleges, in substance: That, on or about December 30, 1920, he being the owner of the land, procured a loan of $6,000 thereon from or through the Conservative Loan Company of Shawnee, Okla.; that he executed a first mortgage on the land in said sum, and for their services in procuring the loan, plaintiff gave four notes in the sum of $300 each, and to secure same executed a second mortgage on the land; that he was unable to pay said notes, and that suit was brought on the four $300 notes and to foreclose the second mortgage, resulting in a sale of said land on July 21, 1924, to one L. D. Straight, agent for the loan company, subject to the said first mortgage; that at the time of said sale he had an agreement with Straight and the loan company that if he, plaintiff, would pay said judgment in full, with all costs, he would convey said land back to plaintiff; that in connection therewith he employed defendant E. G. Hart as his attorney to aid and advise him in carrying out said agreement, and agreed to pay him $500 for his services, $250 of which he alleged was paid in cash; that he proceeded to and did make payments on said judgment to the amount of $598.43; that thereafter, about August 10, 1924, he advised with his said attorney Hart, at which time said land was increasing in value for oil and gas purposes, whereupon it was agreed by and between him and Hart to sell leases and royalty on said land sufficient to satisfy said judgment and all other indebtedness against said land; that it was afterwards agreed by Hart that he would take up all indebtedness against said land and be reimbursed from the sale of oil and gas leases and royalties; that he relied upon Hart to carry out said agreement and fully protecting him and satisfying said judgment indebtedness; that, in violation of his duty towards plaintiff, Hart had, on August 13, 1924, bought said land from Straight, and took a deed in his own name, notwithstanding Hart knew that plaintiff had then paid the sum of $50 on said judgment and continued to receive money from plaintiff to pay on said judgment, and never informed plaintiff that he had bought the land, and that he did not learn thereof until about December 24, 1926, at which time he offered to pay defendant all the balance on said judgment and his attorney's fee and requested that said land be deeded to him; that defendant Hart refused so to do and informed plaintiff that he had sold the land to defendant Whitney. He then alleged that defendant Whitney took said land, with full knowledge of all the facts and plaintiff's rights; and that, on December 30, 1926, defendant Whitney had executed an oil and gas lease on a part of said land to defendant Cozart, and alleged full knowledge by Cozart of all the facts and of his interest in the land. He also alleged that during all this time he had remained in peaceable possession of the land.

Defendant Hart answered by general denial, and specifically denied that he was ever employed by plaintiff, as alleged, and specifically denied that plaintiff had ever paid any money whatever to him to be applied on said judgment; and specifically denied that plaintiff had ever paid him any attorney fee in the premises. He further alleged, in substance, that on the 18th day of September, 1926, he and plaintiff did enter into an agreement relative to said premises, in substance, that he, Hart, should purchase said premises from Straight and then sell to plaintiff at cost to him, plus actual necessary expenses, except he, Hart, should retain an undivided 50-acre interest in all the oil and gas rights in and under said premises, together with the 1926 crop rents as his compensation, with the understanding that if the oil lease or royalty was sold in the meantime, the net proceeds were to be applied upon the purchase price, and that in any event plaintiff was to pay him $1,000 of the purchase price on or before November 15, 1926, and the remainder thereof within 90 days thereafter; that this agreement was oral, but was afterwards reduced to writing by him, and plaintiff had agreed to sign same, but when presented to plaintiff, he did not sign same for the only reason that his wife was not present; that he, Hart, fulfilled all the terms of his agreement, but that plaintiff had wholly failed to perform any part thereof; that more than 30 days before he sold said premises to defendant, Whitney, he notified

plaintiff that he would sell said land to any one who would buy it, but that plaintiff made no response nor objection. He further pleaded estoppel against plaintiff in that in January, 1927, after Whitney had become the owner of said land, plaintiff had authorized him, Hart, as his agent to purchase said lands from Whitney at a profit of $1,000 to said owner.

Defendant Whitney answered by general denial, and further pleads that he is an innocent purchaser for value without notice of plaintiff's claim; he further pleads estoppel in that after he had purchased said premises from Hart, plaintiff had recognized him as the owner of said premises, and had attempted to purchase same from him at a profit of $1,000, and, further, that plaintiff had recognized him as the owner of said premises and had rented same from him and become his tenant.

Defendant Cozart answered, in substance, that he was an innocent purchaser for value without notice. Plaintiff's reply was, in substance, a general denial.

The issues thus joined were tried to the court, Hon. W. J. Crump, assigned judge, resulting in a finding and decree in favor of plaintiff quieting the title to him, but allowing defendant Whitney a lien on the premises in the sum of $12,500, the amount he had paid Hart, and which was in turn used to satisfy all the indebtedness and liens against said land. From this judgment and decree, defendants appeal.

There are some 11 assignments of error, but those relied upon are presented under two propositions, to wit:

"That the findings of fact, conclusions of law, and the judgment of the court are not supported by the evidence, and are contrary to the evidence.

"That the judgment of the court is contrary to the law and to the evidence, and is not supported by the evidence."

In fact, but one question is presented, that is, whether the findings and decree of the court are against the clear weight of the evidence.

We have carefully examined and considered all the evidence in the record, and conclude that the findings and decree are not against the clear weight of the evidence. We deem an extended review of the evidence unnecessary. The two principal questions upon which the evidence is in conflict are: The alleged agreement or understanding between plaintiff and the Conservative Loan Company, that after the sale under the foreclosure, the company would hold the premises in trust for plaintiff and reconvey to plaintiff upon payment by him of the judgment and costs; and whether plaintiff had employed defendant Hart, as his attorney, to represent him in carrying out the arrangement.

Plaintiff testified positively that there was such an agreement, while A. J. Fluke, receiver for the loan company, and L. D. Straight, purchaser at the sale, positively deny the agreement. Sometime after the alleged agreement was entered into, the holder of the first mortgage commenced proceedings to foreclose, and made the receiver and L. D. Straight, the purchaser at the first foreclosure sale, parties defendant. In their answers, the receiver and Straight pleaded substantially such agreement, the allegations of the receiver in this respect being:

"That said lands were sold under an order of sale on the _____ day of _____ 1924, and as a matter of convenience and in pursuance of the contract and agreement between the receivers of the Conservative Loan & Trust Company and the defendant George W. Hardman, the same was bought in by the defendant, L. D. Straight, with an agreement that an oil and gas lease upon said land should be sold, together with a portion of the royalty thereunder, and the proceeds applied:

"(1st.) In the payment of the past due taxes upon said lands.

"(2nd.) In the satisfaction of the judgment of the Conservative Loan & Trust Company and the amounts advanced upon the first mortgage in the payment of interest subsequent to the filing of the suit in which said judgment was rendered and all costs and expenses incurred in the attempt to collect on the second mortgage, and the residue, if any, was to be paid to George W. Hardman and the land to be conveyed to him."

The answer of Straight, in part, alleged:

"That this defendant, at the instance of said Hardman and the said Conservative Loan & Trust Company, agreed to take title to said land, and, under an agreement in writing, it was specifically provided that a lease and a part of the royalty rights in and to the lands described in the plaintiff's petition were to be sold and the money to be applied in the satisfaction of taxes upon said land and the amount due the Conservative Loan & Trust Company, and the remainder, if any, was to be paid to the said George W. Hardman, and the lands, when said taxes and the debt to the Conserva-

tive Loan & Trust Company was paid was to be conveyed to the said George W. Hardman."

By their declarations solemnly made at a time when there was no controversy between plaintiff and Hart, these witnesses refute their own testimony and fully corroborate plaintiff. The trial court found that such agreement was made, and in view of the evidence pointed out, such findng was not against the clear weight of the evidence.

Shortly after the sale, plaintiff, apparently for the purpose of carrying out the arrangement above mentioned, commenced efforts to effect a sale of oil and gas leases on and royalty in said premises. To this end, he enlisted the services of one A. L. Boles of Ada, Okla., who interested the Alcorn Oil Company, a company apparently affiliated with the Marland oil interests in the proposition, and secured from them an offer sufficient to pay off the judgment, etc., subject, however, to approval by their attorney of the title. Abstract of title was furnished the oil company, and Mr. Oakes, their attorney, upon examination of the abstract, pointed out some 50 defects in the title which he required to be corrected. Some of these were of little consequence and easily corrected, while others were such as to require the services of an attorney. Defendant D. G. Hart was employed to assist in making these corrections. The evidence is conflicting as to who employed him. Plaintiff and his wife testify positively that plaintiff employed him at an agreed fee of $500, and that $250 thereof in cash was paid to him by plaintiff's wife, the balance to be paid when the requirements in reference to the title had been met; that this employment was sometime in July or August, 1924, shortly after the sale of the premises to Straight.

Defendant Hart testified positively that plaintiff had never employed him, and that plaintiff's wife had never paid him anything whatever; that she had never been to his office until shortly before the trial, and that he had never seen her and did not know her during the year 1924. He testified that his employment was by A. L. Boles of Ada, Okla., in a conversation over the telephone; that he never looked to plaintiff for his fee, but looked only to Boles. Boles testified that he had never employed Hart, but had referred Hardman to him.

We think, however, some of the correspondence passing between the parties during the summer and fall of 1924, and long before any controversy arose ibetween plaintiff and Hart, shows conclusively that defendant Hart was in fact employed by plaintiff, and that Hart really looked to him for the fee. Sometime about November, 1924, some correspondence was had between plaintiff and the holder of the first mortgage, looking to the renewal or extension of that mortgage. On December 4, 1924, R. H. Sherwood, who owned this mortgage, wrote plaintiff indicating that he might make some arrangements of that kind, and telling plaintiff that he had referred his request to his attorney, Mr. Wilmot, of Wewoka, and suggested that plaintiff have Mr. Hart see Mr. Wilmot about the matter. Plaintiff sent this letter to defendant Hart, and wrote a short note on the back thereof to the effect that he would like to have Hart go to see Wilmot and make arrangements to reinstate the loan, as it would save him several hundred dollars commission on a new loan. On December 13, 1924, Boles wrote defendant Hart suggesting that, if the investor did not accept the interest and renew the loan, then they would attempt to make a new loan elsewhere, urging Hart to proceed with meeting the requirements of the oil company. On December 16, 1924, Hart wrote Boles, informing him that he had seen Wilmot with reference to the $6,000 loan, and that it would be impossible under any consideration to get the loan reinstated, and informing Boles that plaintiff, Hardman, had just sent him a summons in foreclosure on another and different loan, and in said letter used the following language:

"If the foreclosure goes ahead and the new loan is not made, George will have nothing to pay me with. If you think best to go ahead under the circumstances before we are assured the new loan can be made and are willing to see us paid, go right ahead with this."

This, we think, shows conclusively that at that time Hart was looking to plaintiff, Hardman, for pay for his services. Thereafter Boles wrote Hart to the effect that he would see that Hardman paid the fee.

So, taking this evidence of the transaction had at the time when there was no controversy, the finding of the court, to the effect that plaintiff employed defendant D. G. Hart to aid him in correcting the title and meeting the requirements for the sale of the oil and gas lease and royalties on said land to procure funds necessary to pay the mortgaged indebtedness, is not against the clear weight of the evidence, but, on the other hand, is in accord therewith.

Plaintiff introduced testimony tending to show that sometime in the fall of 1926, defendant Hart agreed with plaintiff that he,

Hart, would personally take up the indebtedness against the land, and he would be reimbursed from the funds to be obtained from the sale of the oil and gas lease and royalty. Defendant Hart denied that he entered into an agreement of this kind with plaintiff, but that, on or about September 18, 1926, he entered into an oral contract with Hardman, wherein he agreed to purchase the title of the property from Straight, and that plaintiff agreed if he would do so, he, plaintiff, would repurchase the premises from Hart and pay him the sum of $1,000 on or before the 15th day of November, 1926, and the balance in 90 days thereafter. Plaintiff denied that he had such an agreement.

The record does show that defendant Hart, on or about the 6th day of October, 1924, did purchase the premises from the Conservative Loan Company, taking the deed therefor from L. D. Straight, who was agent for the receiver of the Conservative Loan Company, and who had bought the land in the first foreclosure sale, paying therefor the sum of $1,000. Consideration in the deed is placed at $2,500. Hart appears to have paid a commission of $500 to one F. B. Swan, who assisted him in negotiating for the deed.

Defendants earnestly contend that, because the alleged agreement testified to by plaintiff, to the effect that defendant Hart was to buy the land in for him, plaintiff, and be reimbursed from the sale of the oil and gas leases and royalties, was not in writing and in violation of the statute of frauds, plaintiff is not entitled to recover. They cite many authorities in support of their contention that such a contract to be valid and enforceable must be in writing and signed by the party sought to be charged. This rule is conceded by counsel for plaintiff, but they say that the rule has no application to the facts in the present case. With this contention, we are inclined to agree. Plaintiff was not relying upon this contract, but upon the proposition that Hart was his attorney and held the land as trustee for him.

The trial court found that, at the time defendant Hart took title to the land, he was the attorney for the plaintiff, George W. Hardman, and in taking said land by the deed he acquired from Straight he did so as a trustee for plaintiff, and held said land for the use and benefit of plaintiff. We think the evidence clearly sustains this finding, and that the conclusion of law reached by the court to the effect that defendant Hart in so taking the title of the land, while he was attorney for plaintiff, did so as

trustee for said plaintiff, and that he held the same for the use and benefit of plaintiff, is correct.

In 6 C. J. 682, the following general rule is announced:

"A client has the right to treat all acts of his attorney concerning the interests intrusted to him as done for his benefit, equity and public policy are opposed to an attorney's deriving any advantage in relation to the subject-matter involved which is obtained at the expense of the client, even though there is no actual fraud on the part of the attorney."

And further:

"It results that in all cases where an attorney purchases property involved in litigation, or any other property connected therewith, obtaining it under a special advantage in consequence of knowledge or information acquired through his client, or in the conduct of the case, his client may elect to treat him as a trustee for his benefit, and compel him to account for all profits or to convey to him the property, subject only to a lien for his services and expenditures.* * * An attorney cannot make use of any knowledge acquired by him through his professional relations with his client to promote his own advantage, but in every such case will be conclusively presumed to be acting for his client's benefit."

These general rules are well supported by the authorities, and seem to be well settled.

In Henry v. Raiman, 25 Pa. St. 354, 64 Am. Dec. 703, it was held:

"Attorney at law employed professionally to sustain title to land cannot purchase for himself any outstanding or opposing title, either before or after the cause is ended or during the continuance or after the termination of the relation of attorney and client, whether during the time the client holds for himself or after he has conveyed his interest, and any such purchase will inure to the benefit of his client or the latter's vendee, and will follow the title into the hands of whomsoever may take the land, and the client or his vendee may recover the same on payment or tender of the amount of the purchase money, with interest."

In Martin v. Dickson (Nev.) 241 Pac. 213, it was held:

"Whether during time attorney is acting as such or after such relations have ceased, and whether with client's money or his own money he purchases or acquires subject of litigation, equity will decree that he holds such interest as trustee for client."

Some contention is made that plaintiff cannot recover herein for the reason that during the time L. D. Straight held the title

to said premises, plaintiff remaining in possession thereof acknowledged Straight as a landlord and agreed to pay and did, in fact, pay him rentals on the land. There is some evidence which would in a measure tend to sustain this contention, except for the fact that at all times plaintiff insisted upon his right to repurchase the land and his intention to do so, and in sending money to the Conservative Loan Company referred to in one letter as rent, he stated:

"Find inclose check for $167 for rent that I have on hand now and you might expect some more soon. If I'm successful in getting my lease through, I'll expect to be a part payment on back interest."

It thus appears that plaintiff at all times relied upon his right to pay the judgment indebtedness and have the land reconveyed to him. There is a further contention made that plaintiff cannot recover for the reason that he was guilty of laches, in that after defendant Hart notified him that he had purchased the land and requested plaintiff to reimburse him therefor, he failed so to do for an unreasonable length of time. With this contention, we cannot agree, for the reason that the demands made and relied on were under a separate agreement which defendant Hart claimed to have had with plaintiff and to which plaintiff testified he did not agree. In addition thereto, plaintiff had already substantially completed arrangements with one Gahagan to pay off the indebtedness and all liens against the land for an oil and gas lease thereon, together with the royalties on a part thereof. As soon as Hart learned that this deal was likely to go through, he promptly deeded the land to defendant Whitney. When he did so, he well knew that plaintiff was relying upon his original agreement to save the land to himself. When his efforts were about to succeed, defendant Hart, in violation of his trust, deeded the land to Whitney and Whitney almost immediately executed an oil and gas lease on a part thereof to defendant Cozart, admittedly without consideration or without any intention to convey any interest in the land to Cozart. The record shows that, at all times, plaintiff remained in possession of the land, and was in good faith asserting his interest therein, and that the finding of the trial court that defendant Whitney and defendant Cozart were not innocent purchasers is fully sustained by the record.

Defendant Whitney is fully protected in the money he paid for the land which was used to pay off the liens against the same by the liens given therefor in the judgment.

There being no reversible error in the record, the judgment should be, and is, hereby affirmed.

BENNETT, LEACH, EAGLETON, and HERR, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 2 R. C. L. p. 204; R. C. L. Perm. Supp. p. 377; R. C. L. Continuing Perm. Supp. p. 42. (3) anno. 23 L. R. A. (N. S.) 679; 2 R. C. L. p. 967 et seq.; R. C. L. Perm. Supp. 587. See "Appeal and Error," 4 C. J. §2869, p. 900, n. 96. "Attorney and Client," 6 C. J. §208, p. 682, n. 91. "Trusts," 39 Cyc. p. 633, n. 22.