## MARTIN *v.* DIXON

### No. 2685

December 5, 1925.                    241 P. 213.

1. ACTION—SUIT HELD ONE IN EQUITY TO COMPEL TRANSFER OF STOCK OR IN ALTERNATIVE FOR DAMAGES.

Complaint, alleging that defendant, who had been plaintiff's attorney, obtained certain corporation stock, and concealed such fact from plaintiff, and placed shares of such stock to his own credit, and asking for judgment for return of stock, or, in lieu thereof, for its value, and for damages, and for general equitable relief, *held* one in equity to compel transfer of stock or in the alternative for damages for conversion and detention thereof.

2. CORPORATIONS—THAT PERSON SUING TO COMPEL TRANSFER OF STOCK FAILED TO ESTABLISH DAMAGES HELD NOT TO PRECLUDE COURT FROM COMPELLING TRANSFER OF STOCK.

That plaintiff suing to compel transfer of stock to him did not establish damages did not preclude court from compelling transfer of stock if facts warranted, and decree therefor was not in excess of court's jurisdiction.

3. EVIDENCE — ADMISSION OF DOCUMENTS IN ANOTHER CASE AS ADMISSION AGAINST INTEREST HELD PROPER.

In suit against plaintiff's former attorney to compel transfer of corporation's stock, where complaint showed contractual

relation between plaintiff and defendant, and that such stock was affected with trust in favor of plaintiff, admitting documents in another case in which present defendant was codefendant with plaintiff as admission against interest of present defendant *held* proper.

4. ATTORNEY AND CLIENT — ATTORNEY BUYING STOCK TO WHICH CLIENT HAD RIGHT NOT ENTITLED TO CLAIM THAT CLIENT SHOULD REIMBURSE HIM FOR MONEY PAID FOR IT.

In suit by client against his former attorney to compel transfer of stock which was affected with trust in plaintiff's favor, defendant was not entitled to claim that plaintiff should reimburse him for money which he paid out to acquire stock, and hold it adversely to plaintiff.

5. ATTORNEY AND CLIENT—ATTORNEY CANNOT ALLOW PERSONAL INTEREST TO BE ANTAGONISTIC TO CLIENT.

Attorney cannot allow personal interest to be antagonistic to interests of client.

6. ATTORNEY AND CLIENT—ATTORNEY PURCHASING OR ACQUIRING INTEREST IN PROPERTY SUBJECT TO LITIGATION HOLDS AS TRUSTEE FOR CLIENT.

Whether during time attorney is acting as such or after such relations have ceased, and whether with client's money or his own money he purchases or acquires subject of litigation, equity will decree that he holds such interest as trustee for client.

7. ATTORNEY AND CLIENT—BURDEN OF SHOWING NONEXISTENCE OF FIDUCIARY RELATION HELD TO REST ON ATTORNEY WHO PURCHASED STOCK IN WHICH CLIENT HAD INTEREST.

Where attorney purchased stock, subject of litigation, in suit by client to compel transfer of stock to him, burden of severing his fiduciary relation from transaction in which he had personal interest was on attorney.

8. ATTORNEY AND CLIENT—PROOF OF PURCHASE OF STOCK, SUBJECT OF LITIGATION, BY ATTORNEY HELD TO ENTITLE CLIENT TO TRANSFER THEREOF WITHOUT PROOF OF ACTUAL FRAUD.

On evidence showing that attorney purchased stock, subject of litigation, for his own advantage, client was entitled to return thereof without proof of actual fraud.

9. ATTORNEY AND CLIENT — JUDGMENT REQUIRING ATTORNEY TO RETURN STOCK, SUBJECT OF LITIGATION, PURCHASED BY HIM, TO CLIENT HELD PROPER.

In suit by client to compel return of stock, subject of litigation, purchased by attorney, where attorney failed to sustain burden of showing that purchase by him was fair and honest, and that client was fully apprised of his rights, and effect and consequence of his acts, judgment requiring transfer of stock to client was proper.

See (1) 1 C. J. sec. 174, p. 1044, n. 44; (2) 21 C. J. sec. 138, p. 157, n. 52 (new) ; (3) 22 C. J. sec. 370, p. 329, n. 55; (4, 5, 6, 7, 8, 9) 6 C. J. sec. 208, p. 682, n. 88 (new), 90, 91; sec. 213, p. 689, n. 40; sec. 214, p. 689, n. 44; sec. 259, p. 710, n. 17 (new).

APPEAL from Second Judicial District Court, Washoe County; *James A. Callahan,* Judge.

Suit by Joseph Martin against J. B. Dixon. Judgment for plaintiff, and defendant appeals. **Affirmed.**

*Sardis Summerfield,* for Appellant:

Allegations of complaint are all characteristic of trover for conversion. Rule stated in Dixon v. S. P. Co., 42 Nev. 81, and earlier cases, is carefully set out, but later paragraphs make claim for special damages as stated in Ward v. Carson etc. Co., 13 Nev. 62. Plaintiff did not avail himself of special provisions of Rev. Laws, 5124 to 5135, for obtaining converted property. He cannot now claim delivery and rely on measure of damages for conversion. There being no evidence on which damages could be calculated, judgment ought to have been for defendant, or merely nominal damages for plaintiff. Dixon v. S. P. Co., supra.

By many decisions proper remedy for conversion lies in trover.

Allowance of damages is only remedy our courts have power or jurisdiction to grant. Judgment is in excess of jurisdiction. Cases supra; 26 R. C. L. 1105.

Courts should authorize amendments to make case as intended originally, but not to insert new or distinct cause of action or defense. Nevada Mng. Co. v. Rae, 47 Nev. 173.

Fraud must be proved as alleged; court cannot permit substantial variance. Fraud is never presumed. Gruber v. Baker, 20 Nev. 476.

Client's right to attorney's purchase must be exercised within reasonable time or is waived, particularly where there is no moral turpitude on attorney's part, because delay may affect parties to transaction or value of property. By dealing with attorney as owner, client may ratify act and estop himself. 6 C. J. 682, 685.

*John S. Sinai,* for Respondent:

Relation of attorney and client is one of highest trust

and confidence. If good faith of attorney is attacked by client, burden shifts and it is incumbent on attorney to prove perfect good faith. Attorney must give client all information and advice which it would be his duty to give if uninterested. Client has right to treat all acts of attorney concerning interests entrusted to him as being for client's benefit. Attorney must not receive any benefit from subject matter at expense of client even if there is no actual fraud. Attorney cannot use for his own benefit, as against client, information acquired in professional capacity. He cannot represent conflicting interests. His business transactions with client are scrutinized with jealous care. Exception to general rule that knowledge of attorney is knowledge of client exists where attorney is acting in his own interest as opposed to client's. Purchase by attorney without consent of client, of interest in thing in controversy, is usually forbidden. 6 C. J. 682, 686; 2 R. C. L. 966; 1 Page on Contracts, 685; Gibson v. Gayes, 6 Ves. 278; Baker v. Humphreys (U. S.), 25 L. Ed. 1067; 4 A. L. R. 1618.

Where bill is filed to set aside contract or deed between parties standing in confidential relation, defense of laches is not regarded with favor. 2 R. C. L. 970.

Where it is plain from answer that if demand had been made it would have been refused, it does not lie in mouth of defendant to object that no demand was made. Cox v. Dalmas, 33 Pac. 836.

Stock sued for is not in certificate form but is intermingled with other shares and cannot be described as required by Rev. Laws, 5124–5135. Action in conversion and in claim and delivery can be filed in one suit, particularly under direct allegation of fraud in conversion, but action in claim and delivery is not proper to recover intermingled property. Ashton v. Haydenfeldt, 56 P. 624.

## OPINION

By the Court, SANDERS, J.:

This is a controversy between Joseph Martin, respondent, plaintiff below, and J. B. Dixon, appellant, defendant

below, over certain shares of the capital stock of the Wedekind Mines Company, a corporation, which shares of stock are referred to in the case as the "Englander stock." The case was tried without a jury. The court found in favor of the plaintiff and against the defendant, and ordered the defendant to transfer to the plaintiff 142,166⅔ shares of the capital stock of said corporation standing in his name upon its books, and ordered the defendant to pay to the plaintiff the sum of $1 nominal damages. The case is here upon the defendant's appeal from said judgment or order, and also from an order denying the defendant's motion for new trial.

The principal assignments of errors make it necessary to review the complaint and the court's findings of facts at length.

1. We do not take seriously the contention that the court erred in permitting the plaintiff upon the close of his case to amend his complaint to conform to the evidence. The complaint, as amended, shows that in May, 1909, the plaintiff employed the defendant, an attorney at law, to bring actions and collect wages from Sparks Mining Company and Desert King Mining Company on contingent fees of 50 per cent on the recoveries, plaintiff to pay all disbursements under written contract, which contract is made a part of the complaint; that in May, 1910, the defendant obtained judgments in plaintiff's favor in the federal court of this district against said debtor companies, aggregating in amounts the sum of $5,395; executions issued on these judgments, and on July 2, 1910, the plaintiff acquired full title to all the properties by a Marshal's deed. The complaint shows that, prior to the acquirement of title, upon the advice of the defendant, it was deemed for the best interests of the parties to organize a corporation to take over the properties of the debtor companies in contemplation of their becoming purchasers thereof at said execution sales. On June 29, 1910, the Wedekind Mines Company was organized under the laws of this state, with a capital stock of 1,000,000 shares, of the par value of $1 each. On July 2, 1910, all the properties so purchased

were conveyed to the corporation in consideration of the issuance to Martin and Dixon of its entire capital stock. On July 2, 1910, by a verbal agreement and understanding between the parties, 149,000 shares of the capital stock of the corporation were placed to the credit of its treasury, and the remaining 851,000 shares were distributed as follows: 566,666⅔ shares were issued to one H. M. Englander under a written agreement between Englander and the parties, and 283,333⅓ shares were issued to Martin and Dixon jointly. The said Englander agreement is referred to in the complaint as an option, for which Englander paid the parties a cash consideration of $2,000. One of the considerations for said option was that within 12 months from its date Englander should sell the holdings of the corporation for $250,000, which sum, in the event of sale, was to be divided between the parties in proportion to their stock holdings. The option further provided that, if the property of the corporation was not unwatered or sold within 12 months from the date of the contract, Martin had the right to repurchase the Englander stock upon payment of the costs and expenses incurred by Englander in connection with the corporation. Upon information and belief the complaint alleges that the Englander contract at the time of suit was in the possession of the defendant. It further alleges that the option was not exercised by Englander, and that the property was not sold, and that by reason of the failure of Englander to exercise the option and to comply with its terms and conditions the stock issued to Englander reverted to the parties in accordance with the terms and conditions of the option. It alleges that the defendant obtained the Englander stock, concealed the fact from the plaintiff and placed the full number of shares of said stock to his own credit, under his own name and to his own use, benefit, and advantage, and against the use, benefit, and advantage of the plaintiff; that by reason of the conversion of said stock and the withholding thereof from the plaintiff the defendant had unlawfully and fraudulently assumed con-

trol of the affairs of the corporation against the interests of the plaintiff, elected himself president and general-manager of the corporation, and conducted its business, and held meetings of its directors without notice to the plaintiff. The complaint shows that in April, 1917, the defendant gave plaintiff a certificate for 283,333⅓ shares of the capital stock of the corporation, which shares of stock were less than one-third of the outstanding stock of the corporation, and refused upon demand to give to plaintiff any part or portion of the Englander stock. It alleges that plaintiff at the time of the conversion of said stock was and is now the owner thereof and entitled to its rightful possession and use, and that the reasonable value of said 142,166⅔ shares was $40,000. The complaint charges that by reason of the defendant's wrongful use of said stock the Wedekind Mines Company brought an action against the plaintiff and ousted him from the possession and occupancy of the premises of the corporation, to his damage in the sum of $7,000, and that by reason of the wrongful, illegal, and fraudulent conversion and detention of said stock the plaintiff was damaged in the sum of $20,000. The complaint asks judgment of the court for the return of the stock in controversy or, in lieu thereof, its alleged value, and demands judgment for the damages alleged in the complaint, and for general equitable relief.

The question for determination is, what is the nature of the action? The defendant contends that in form the cause of action stated in the complaint is in trover, and, there being no proof of damages, the court below exceeded its jurisdiction in compelling the defendant to return to the plaintiff the shares of stock in controversy. It is true the complaint contains allegations that may make it good as an action in trover, but, if we treat the case as in trover, then the very foundation of the complaint, in so far as it asks for the return of the stock, is destroyed. If the action is to be treated as one in trover, all the allegations of the complaint setting forth the contractual relation of the parties to each other and

their relation to the subject matter of the suit must be regarded as surplusage.

2. We are convinced that the proceeding was one in equity to compel the transfer of certain shares of stock to the plaintiff; and, if said stock could not be transferred, then asking a decree for compensation and damages for the wrongful use made by the defendant of the stock, and for its conversion and detention. The fact that the plaintiff failed to establish damages did not preclude the court from exercising its equitable power and jurisdiction to compel the return of the stock to plaintiff, if the facts warranted. The court's verdict was that the plaintiff was the owner, and rightfully entitled to the possession and use of the stock in controversy, but was not entitled to damages. Since the proof shows the defendant to be in position to make return of the stock, whatever the action may be called, the court did not exceed its jurisdiction in rendering the decree it did.

We shall now advert to the court's findings. The arguments advanced in opposition to them are that they are based largely upon evidence foreign to the cause of action stated in the complaint, and upon evidence that changed completely the nature of the cause of action, and that the evidence does not support the findings. We deem it unnecessary to review the evidence. It is sufficient to say that, if it were such as to be admissible under the averments of the complaint, it supports the findings.

3. The argument is advanced that the court below erred in admitting in evidence the pleadings, files, and exhibits in a former action referred to herein as the "Englander case," wherein the Wedekind Mines Company, H. M. Englander, and C. S. Denson were plaintiffs, and J. B. Dixon and Joseph Martin were defendants. It is contended that the purpose and the legal effect of this documentary evidence was to change, and did change, the nature of the cause of action.

This contention can be attributed only to the view urged by counsel that the complaint in form is solely in trover, which view we have declined to accept. The record discloses that the admission of the documents

complained of came about in this way: The complainant
had alleged that the Englander contract at the time of
suit was in the defendant's possession; that the defend-
ant obtained the Englander stock covered by the Eng-
lander option contract, and concealed the fact from the
plaintiff. It developed on the trial that the Englander
stock was made the subject matter of the "Englander
case"; that in that case Dixon acted as attorney for
himself and his codefendant Martin, and filed on behalf
of Martin his answer and counterclaim, in which he set
up the Englander contract, and alleged its breach, and
demanded the return to Dixon and Martin of all the
Englander stock upon Martin's offer to do equity in
accordance with its terms and conditions. In the
Englander case Dixon, in addition to his separate
answer, filed therein his own affidavit, in which he
deposed that all the averments contained in Martin's
answer and counterclaim were true of his own knowl-
edge. It developed on the trial of this case that, while
the Englander case was at issue, Dixon entered into
negotiations with Englander's attorney for the purchase
of the Englander stock, and in January, 1914, purchased
said stock by paying therefor $4,400 of his own money,
and that upon its purchase Englander and his coplaintiff
filed a retraxit, and Martin and Dixon, filed a release
to Englander and his coplaintiff, and the Englander
case was dismissed. The record discloses that the docu-
ments were admitted in evidence, for the reason that,
when Dixon obtained the Englander stock, the relation
of attorney and client subsisted between Dixon and
Martin, and that the documents contained admissions
against Dixon's interests in this action. While the com-
plaint does not aver that Dixon obtained the Englander
stock in violation of the relationship of attorney and
client, it does sufficiently appear that the contractual
relation between the parties and their relation to the
Englander stock was impressed with a trust, and we are
of opinion that the documents, instead of changing the
nature of the action, furnished a further and higher
ground for the court to compel Dixon to return to

Martin his part or portion of the Englander stock. The documents were properly admitted in evidence.

4, 5. It is argued on the part of defendant that in any view of the evidence the plaintiff should have been required to reimburse the defendant for one-half the cost of the Englander stock. An attorney cannot allow his personal interests to be antagonistic to those of his client. Counsel for the defendant stresses the fact that Martin testified that Dixon told him he held the Englander stock and intended to do as he pleased with it. We do not see that this statement affected in the least Martin's right to the stock. The statement of Dixon evinced his intention to hold Martin's interest within his grasp and make use of his power to his own advantage and to Martin's detriment. If the purchase of the Englander stock was not under the circumstances intended as fraud, it had that effect on Martin. Dixon paid $4,400 for the Englander stock, not for Martin, but to acquire absolute title for himself, and to hold it adversely to Martin. Convicted of these acts by the court's verdict, he is in no position to say the court erred in not compelling Martin to reimburse him for money which he used in an effort to overreach and defraud his client. Courts of conscience will do no such thing. Henyan v. Trevino (Tex. Civ. App.), 137 S. W. 458.

6-9. It is contended, however, that the relation of attorney and client had ceased, and that the court found that Dixon's contract of employment as attorney was completed, and therefore the court erred in basing its findings largely upon the ethical phases of the case made by the proof and not shown by the complaint. The authorities are uniform in holding that, whether during the time an attorney is acting as such or after such relations have ceased, and whether with his client's money or with his own money he purchases or acquires an interest in the property, in any way the subject of litigation, a court of equity will decree that he holds such interest as trustee for the client. Stanwood v. Wishard (C. C.), 128 F. 502; Thornton on Attorneys at Law, sec. 169. It is true the complainant did not ask

that the Englander stock be impressed with a trust in his favor; but the rule which requires the utmost fairness and good faith in dealings between attorney and client must be applied as long as the influence arising from the relationship exists, although this may extend beyond the continuance of the relationship itself. 6 Corpus Juris, p. 689. The burden of severing his fiduciary relationship from the Englander transaction in which he had a personal interest was cast upon Dixon. Youngquist v. Hunter, 227 Ill. App. 152. The evidence in this case shows that Dixon purchased the stock for his own advantage and to the disadvantage of Martin, which entitled Martin to the return of the stock, without proof of actual fraud. Thornton on Attorneys at Law, sec. 156. Dixon having failed, in the judgment of the trial court, to sustain the burden cast upon him to show that the transaction was fair and honest, and that Martin was fully apprised of his rights, and the effect and consequences of his acts, we conclude upon the whole case that the trial court discharged its full duty in requiring Dixon to transfer to the plaintiff the shares of stock in controversy, and we shall best discharge our duty by affirming its judgment.

It is so ordered.