JOHN DAVIDSON, LORETTA M. DAVIDSON, JOHN DOE 1ST TO 5TH, INCLUSIVE, APPELLANTS, *v.* NELLIE STREETER, RESPONDENT.

No. 3629

August 14, 1951. 234 P.2d 793.

*Samuel Platt,* of Reno, for Appellants.

*Kearney & Adams,* of Reno, for Respondent.

**OPINION**

By the Court, BADT, C. J.:

The trial court imposed a constructive trust upon certain real property theretofore conveyed by the plaintiff to defendants, by instruments absolute in form, and ordered defendants to reconvey the same to plaintiff (subject to the rights of certain third parties), and entered judgment for plaintiff against defendants for the excess of receipts from the property over disbursements for the purchase price, taxes, insurance, repairs, upkeep, etc. The court made findings to the effect that at the time of the conveyances by the plaintiff, Davidson had orally agreed to hold the premises for her benefit, to collect the rentals, make the necessary payments under a subsisting contract of purchase, etc., all of which he had carried out; that he eventually sold the premises, and, upon plaintiff's demand for payment, repudiated his oral agreement.

Davidson (generally referred to as the appellant herein—his wife being joined because she was a co-grantee) assigns fourteen errors in support of his appeal, which may however be condensed into six assignments: (1) That the evidence does not support the findings, and particularly that the court failed to apply the rule requiring clear and convincing proof of the trust; (2) that plaintiff's claim is barred by laches; (3) that it is barred by the statute of limitations; (4) that the amended complaint (with supplemental amendments thereto) is deficient in not alleging diligence on the part of plaintiff, which would have disclosed that

for many years plaintiff had been claiming the property as his own; (5) that the asserted oral agreement to hold the property in trust for plaintiff was void under the statute of frauds; and (6) that the judgment does not do equity, and that innocent third party purchasers for value, without notice, are not protected by the judgment.

We have concluded that the assignments of error are without merit, and that the judgment and order must be affirmed. The pertinent facts are as follows:

Although the transaction in which Mrs. Streeter conveyed her interests in the property to Davidson, the nature of which transaction is the main question in dispute here, occurred in Davidson's office in Reno in December, 1936, it becomes necessary to review matters occurring some years prior to that occasion. The particular status of the parties too becomes important. Davidson is an attorney, having been admitted to practice in California in 1913 and in Nevada in 1932, from which year until 1938 he was employed by Mr. W. M. Kearney, a Reno attorney. In the latter year he left Mr. Kearney's employ and opened offices immediately adjoining. Mrs. Streeter, a woman now of the age of seventy years, and with little if any schooling, and without experience in legal transactions and who had been for some years a client of Mr. Kearney, met Davidson about 1932 and the latter thereafter handled a number of legal matters for her over a period of years. She testifies that his work was satisfactory and that she had confidence in him and relied on him. On March 26, 1935 she signed two written agreements with Reno Realty Syndicate to purchase two parcels of land, made a down payment of $250 and entered into possession, rented rooms in the premises to tenants and expended some $1,000 in improvements. After making monthly payments in excess of some $600, she became in arrears and the Syndicate, on March 26, 1936, commenced an action to cancel her contract. Mr. Davidson, then in Mr. Kearney's office, advised her in the matter, drew an answer

for her and negotiated a settlement, under which the suit was dismissed and she entered into two new contracts on July 8, 1936. The new contracts provided for a slight increase in the purchase price ($9,000, raised to $9,100) and for slightly increased monthly payments ($50, raised to $55) on the larger parcel. The smaller parcel was covered by a ten-year lease with a yearly rental of $10 and an option to buy for $500. When Mrs. Streeter called on Mr. Davidson in December, 1936 she had made either four or five of the $55 monthly payments, amounting (with interest on the deferred payments) to either $436.42 or $544.70. Prior to the dismissal of the first cancellation suit and the negotiation of the new contracts, she had expended over $1,500 upon the property. It thus appears that she had a substantial interest in the property when she again consulted Davidson in December, 1936. On that occasion no one was present other than the parties, and their testimony as to what occurred is in direct conflict. She says she went to him for advice because the police were under the impression that she was not conducting the property properly; that she knew Davidson was friendly with the administration and asked if he could do anything to help her: "* * * he said he could do it if I would put the property in his name, that he would take care of it and handle it for me, and he would collect the rents and try to get a buyer for it, and that I didn't have anything to worry about. I had another place to go to. * * * He told me to come back in a few days and he would see what he could do, and then when I went back he had a paper for me to sign and I signed it * * * [he said] he would take care of the rentals and keep the payments made on it, and any repairs, if necessary, and try to get a buyer for it at a good price, and * * * after the property was sold * * * he said he would settle whatever money he got; he would settle up with me. * * * I thought it was all right. He was my attorney representing me and I had confidence in him. I thought it was perfectly all right."

Mr. Davidson on the contrary described the interview as follows: "Mrs. Streeter talked to me about the fact that she had to get out of the premises and that she couldn't afford to carry on the payments due under the agreement for the purchase of the property and that as she owed me money, she felt it would be fair if I would take over the contract as my own, that she couldn't continue the payments and she wanted me to have it. That was the substance of it * * *. She executed the contract in December '36, and it was necessary for me to make certain improvements or spend some money on the property, and I told her—I said, 'I cannot go on without getting the absolute conveyance from you to this property, as I might have to have the title of the property from you. I may need some money for the purpose of advancing it on improvements. * * * I feel better satisfied and safer with a deed from you conveying the title to me,' and that was about six months later or seven months or so."

For some ten years thereafter Mr. Davidson carried on. Again there is a conflict in the testimony. Davidson testified that from 1940 to 1946, inclusive, Mrs. Streeter never visited his office. Mrs. Streeter says that she saw Davidson occasionally after August, 1937; that they had discussions about rentals and how things were going; that she saw him quite often between 1937 and 1947, several times a year; that Davidson said that things were going all right, only that he had repairs to make and insurance to pay and things to keep up, but that it was rented and in good order; that in 1947 she heard that he had sold the property; that she met him in the corridor of the courthouse and the following took place. She said: "I heard you sold the property, how much have I got coming? He said, 'I didn't get all the money; I sold it on contract.' The bailiff objected to us talking. * * * Mr. Davidson * * * told me to come over to his office later, and in a few days I went to his office and got an appointment with him and then I asked him why he couldn't settle with me, why did I have to

wait until he got the rest of the money, and he said, 'How much do you think you have coming?' I said, 'You have all my papers' * * * 'I think Ten Thousand Dollars is all right.' He said, 'You are lucky if you get Two Hundred and Fifty.' I said, 'Is that your offer?' He said, 'I am not offering you anything.' I said, 'What are you doing?' He wouldn't answer * * * that was the end of that conversation." As to the period between 1936 and 1947, she testified that Davidson never indicated to her that he claimed to own the property or any interest in it; that when she would be short of money and would ask him if he had any surplus out of the rents, he always said that he did not, that something was to be done on the premises and that he had put out money for this and that—a roof to fix, insurance to be paid, etc.

Davidson introduced his canceled checks showing his payments concerning the property over the years. Payments on the contract aggregated $11,540.19, for repairs he paid out $3,217.28, in taxes he paid $2,056.03, and in insurance premiums $318.42. Fire destroyed a part of the premises and he prosecuted an action against the insurance company resulting in a collection of $2,000, of which $1,600 was applied on the purchase contract, $300 paid for attorney fees and $100 retained by Davidson. In conjunction with Reno Realty Syndicate he prosecuted an action to quiet title to the property (to which Mrs. Streeter was not a party and in which she was not served with process), in the course of which summons was published, notice of *lis pendens* recorded, etc. Davidson asserts that all of these things were open and notorious, without any concealment, with the knowledge or presumptive knowledge of Mrs. Streeter, but that she never in all the ten years asserted any rights to the property.

During such period Davidson received an aggregate of rentals and proceeds of sale in the sum of $19,401 and had paid out according to his own figures an aggregate

of $17,131.92.[1] Certain additional facts should be noted. Davidson never had the purchase and sale contract changed in the records of the office of the Reno Realty Syndicate. Both before and after the assignment it was carried in the name of Mrs. Streeter. Before the assignment Mrs. Streeter's payments were all made through Davidson. After the assignment Davidson continued to make the payments. Furniture owned by Mrs. Streeter remained in the premises. It was subject to a chattel mortgage to one Cafferata, and Mrs. Streeter made the payments on the chattel mortgage through Davidson, including the final payment of $45, for which Davidson issued his receipt to Mrs. Streeter on July 30, 1940, "being in full of chattel mortgage * * *."

1. Our first concern is with the statute of limitations. Mr. Davidson insists that Mrs. Streeter's cause of action, if any, arose at the time of her conveyances to him and that she is therefore clearly barred. However, with the court's finding that she had conveyed the property to Davidson in trust for her benefit, all of Davidson's handling of the property was consistent with such trust, and there was no breach and consequently no cause of action arising in Mrs. Streeter until his repudiation of the trust. White v. Sheldon, 4 Nev. 280; Steinberger v. Steinberger, 60 Cal.App.2d 116, 140 P.2d 31.

2. She commenced her action within two months of such repudiation and Davidson's defense of laches is therefore likewise without support.

3. We are next concerned with the possible application of the statute of frauds. Our statute in this regard, sec. 1527 N.C.L.1929, reads as follows:

---

[1]The precise amounts of debits and credits reflected in the findings and final judgment of the court are the result of additional debits and credits since the commencement of the action and are according to figures submitted by Davidson and are not disputed.

"No estate, or interest in lands, other than for leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by act or operation of law, or by deed or conveyance, in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same, or by his lawful agent thereunto authorized in writing."

In Bowler v. Curler, 21 Nev. 158, 26 P. 226, 227, the court contented itself with saying:

"The plaintiff conveyed the property to the defendant because of the confidence reposed in him, without consideration other than he should hold it subject to the trust mentioned. If defendant were permitted to retain it, plaintiff could be defrauded, and the statute, which was intended to prevent frauds, would be the means for the accomplishment of a fraud. To prevent such a result, equity raises a constructive trust in the grantee and in favor of the grantor."

The court cites a number of the early cases holding clearly that where a confidential relation exists, pursuant to which a deed is executed to the grantee for the benefit of the grantor or a third person, the trust arises from the violation of the oral agreement purporting to create the trust, and the court in granting relief proceeds upon the ground of fraud, actual or constructive, and enforces the agreement notwithstanding the statute, by reason of the special circumstances.

This section is almost identical with sec. 1971, California Code of Civil Procedure. The California cases pursue the reasoning further. In Cooney v. Glynn, 157 Cal. 583, 108 P. 506, 508, a mother conveyed real property to her son upon his oral promise to hold it for the benefit of his sister, the grantor's daughter. The son so held

it for a period of time, devoting the proceeds to his sister's use, but thereafter repudiated the trust. The court refers to many earlier cases holding that where confidential relations exist between two parties and one conveys to the other on the other's parol promise to hold for the benefit of the grantor or a third person, with no other consideration, a trust arises by operation of law in favor of the beneficiary. The court says: "It is the violation of the parol promise which constitutes the fraud upon which the trust arises. If made in good faith, and if it is of a continuing nature, the performance of it for a time does not prevent a trust from arising when it is broken and repudiated." Among other cases, reference is made to Brison v. Brison, 75 Cal. 525, 17 P. 689, 7 Am.St.Rep. 189; *id.* 90 Cal. 323, 27 P. 186. In the first Brison case many early American cases, as well as some of the early English cases, are discussed. It is expressly recognized that under the statute of frauds a contract to convey land is void unless in writing and that no trust in real property is valid unless created by writing or by operation of law and that accordingly a defendant's oral promise to reconvey is invalid and cannot be enforced. However, it is under the theory of the exception to the statute, namely, where the trust arises "by operation of law" that the courts have consistently imposed a constructive trust arising out of the breach of the oral agreement, especially where a confidential relation existed between the parties. "The betrayal of such confidence is constructively fraudulent, and gives rise to a constructive trust. This is independent of any element of actual fraud. 1 Story, Eq. Jur. secs. 258, 307." *Id.* 17 P. 689, 691, and again: "We think the authorities fully bear out the assertion that in such cases a constructive trust arises, and that the statute of frauds has no application." It was said that equity will not permit the confidence placed in the grantee to be betrayed, and that when one uses a confidential relation to acquire an advantage which he ought not in equity and good

conscience to retain, the court will convert him into a trustee and compel him to restore what he seeks unjustly to retain. After quoting Lord Hardwicke in Young v. Peachy, 2 Atk. 254, to the effect that the rule had been recognized in many cases since the adoption of the statute of frauds, the court, as if foreseeing such a case as the present, said: "For, if the relief cannot be granted in this case, we do not see how it could be granted if an attorney should, by his parol promise, induce his client to put the property in his name for some temporary purpose, and then refuse to reconvey on the ground of the absence of a written acknowledgment. * * *" It is further made clear in Brison v. Brison that the granting of the necessary relief, through parol proof of the oral promise is not a violation of the parol evidence rule, because it does not contradict the deed but raises out of the transaction an equity *dehors* the deed, "binding the grantee's conscience to hold the land for the real purposes of the conveyance" where the use of the deed according to its legal operation would work a fraud. In such case the equity is held to be independent of the deed, not contradicting it, but explaining the transaction out of which the equity arises. In short, parol evidence is admissible to raise a trust in cases of actual or constructive fraud. This seems to be well settled.

4. The parties are in disagreement as to the nature and degree of proof devolving upon the respective parties under the circumstances. Appellant insists that the usual conflict of evidence rule has no application here and that the appeal should be considered in light of the statement made in Consolazio v. Summerfield, 54 Nev. 176, 10 P.2d 629, 630, in which this court said, citing authorities: "The general rule of this court is that when the evidence is conflicting and there is substantial evidence to sustain the judgment it will not be disturbed. But there is an exception to the general rule to the effect that where, upon all the evidence, it is clear that a wrong conclusion has been reached, the judgment will be

reversed." This salutary exception was approved in Valverde v. Valverde, 55 Nev. 82, 26 P.2d 233, and we should not hesitate to apply it if we were convinced that the trial court had clearly reached a wrong conclusion upon all the evidence. More strenuously, however, appellant insists that in order to establish by parol the existence of a trust in property conveyed by deed absolute in form, the evidence should be clear and convincing. Bogert, Trusts and Trustees, Vol. 2, sec. 49, p. 231; that a high degree of proof is required, 23 A.L.R. 1502; that the proof must be "strong and satisfactory," "clear and attended with no uncertainty," "clear and conclusive," Mitchell v. O'Neale, 4 Nev. 504; Dalton v. Dalton, 14 Nev. 419; that it must be "clear, definite, unequivocal and satisfactory," Moore v. De Bernardi, 47 Nev. 46, 220 P. 544, 545. Appellant refers not only to these cases but to others of similar nature and points out that in a number of such cases the court reviewed the testimony to determine whether the rule had been properly applied.

Respondent, as vehemently, insists that the requirement for clear and convincing proof to establish a constructive trust based upon the violation of an oral trust arrangement does not apply where the transfer is made to a fiduciary, but that in such instance the burden of overcoming certain presumptions is upon the fiduciary. We are in agreement with this contention. A clear expression of this rule is found in Katz v. Enos, 68 Cal. App.2d 266, 156 P.2d 461, 467, in which it was said:

"Appellants argue generally in regard to the sufficiency of the evidence that in a case such as this, the deed is presumed to convey absolute title and the burden of proving it did not do so is upon plaintiff and that to overcome this presumption plaintiff's proof must be 'clear, satisfactory and convincing.' However, the courts have repeatedly held that the question as to whether the evidence is 'clear and convincing' or sufficient to sustain a judgment for the plaintiff 'must be determined by the trial court,' and that the determination of the

trial court will be accepted 'as conclusive' on appeal. 25 Cal. Jur., Trusts, sec. 114, p. 248, and cases cited; 11 Cal. Jur. 10 Yr. Supp. p. 25, and cases cited. In this connection it should be stated that the presumption and burden of proof rule contended for by appellants do not apply where a confidential relationship is shown to exist between the parties at the time of the execution of the deed. Here the court found that such relationship did exist, and it would seem that the evidence is sufficient to support such finding. Steinberger v. Steinberger, 60 Cal. App. 2d 116, 140 P.2d 31. However, even assuming that such relationship did not exist, the evidence is legally sufficient to sustain the trial court's findings under the rule contended for by appellants."

To similar effect is the rule as stated in 65 C.J. 320, Trusts, sec. 82, *id.* 490, sec. 234. In Moore v. Rochester Weaver Min. Co., 42 Nev. 164, 174 P. 1017, 19 A.L.R. 830, it was said that the presumptive invalidity of the transaction on the ground of constructive fraud, where an attorney deals with his client for the former's benefit, can be overcome only by the clearest and most satisfactory evidence. The rule was said to be founded in public policy, being intended as a protection to the client against the strong influence to which the confidential relation naturally gives rise. See also Martin v. Dixon, 49 Nev. 161, 241 P. 213. In any event we are not prepared to say as a matter of law that the trial court failed to apply the rule as to the standard of proof insisted upon by appellant. In the second Brison case cited above and as reported in 27 P. 186, 189, it is said: "* * * but it must also be conceded that whether the evidence in any case is of this character [clear, satisfactory and conclusive] must be determined by the trial court, and that this court must accept the determination of the trial court thereon as conclusive." It should be noted in this regard that in its written decision the trial court stated that the plaintiff had "proved her case by clear and convincing evidence." Whether, in the absence from

the case of the fiduciary relation of the parties, we should feel that this court is bound to follow the rule above stated, and is bound by the trial court's statement, we need not here determine.

The fiduciary relationship can hardly be disputed. Appellant, an attorney of many years practice, was dealing with his client, a woman of rather advanced years, of very limited education and with no experience in legal matters. Appellant acted as respondent's attorney not only for a number of years prior to and following the transaction in question but concerning the very property involved in the transfer from client to attorney. He was at the time acting as her attorney in the matter of a chattel mortgage on her furniture situate in the same premises. Mrs. Streeter had complete confidence in Davidson and was satisfied with the work he had done for her and relied upon him. At the time she had a substantial equity in the property. Davidson was entirely familiar with it. She called on him to discuss with him as her attorney what was to be done about it under the circumstances. With the fiduciary relationship thus established, the transaction called for the closest scrutiny by the trial court.

Even were this not the case, we are not able to say that the evidence adduced by plaintiff fell short of the requirement for clear and convincing proof. Her own testimony may indeed, as pointed out by appellant, have been somewhat weakened by cross-examination, but the same can be said of the testimony of appellant himself. Respondent's equity in the property and her desire to protect it are clearly shown. Davidson maintains that when she came to him, she had lost all hope of maintaining the property and was confronted with the necessary alternative of abandoning it or conveying it to him, and that he consented to take it over as a gamble. In one place in his testimony he refers to the transfer as a gift. After

he took the assignment, he later required a deed because he had to make certain improvements. He himself testifies that he told Mrs. Streeter, "I cannot go on without getting the absolute conveyance from you to this property, as I might have to have the title of the property from you." He had never obligated himself to Reno Realty Syndicate to comply with the terms of Mrs. Streeter's contract. Initially, in any event, he was taking no gamble. When Mrs. Streeter defaulted in her first contract, the Syndicate had to file a suit to cancel it, and Davidson drew an answer setting up her equities and alleging the improvements she had made. At the time of her transaction with Davidson her equities were greater. She had made additional payments and she undoubtedly had at least a nuisance value that was worth something. As a lawyer Davidson must have known this.

Appellant suggests that it is not unusual for an attorney to enter into business relations with his client and that the transaction in question should be characterized as a business transaction rather than as one dealing with the relationship of attorney and client. This, however, is without force if, as at one time asserted by Davidson, the transfer was a gift. As a transfer in consideration of sundry indebtednesses due Mr. Davidson from Mrs. Streeter for legal services and for moneys advanced, appellant's suggestion is likewise without point. The evidence submitted by Davidson as to moneys due him from Mrs. Streeter for services or moneys advanced produced no conviction in the mind of the learned trial judge. He found that neither of the defendants paid any consideration for the assignments or the deed, that they were not made for any preexisting indebtedness, that they were given without consideration and were not given as a gift, but were executed by Mrs. Streeter to Mr. Davidson in trust for her.

5. We are unable to say that the amended complaint as supplemented by further amendments was deficient

in not alleging diligence on the part of the plaintiff by the exercise whereof she could have ascertained that Davidson was claiming the property as his own. His action to quiet title to the end that a merchantable title might be transferred to a purchaser, his collection by suit of the fire insurance and the application of the proceeds, less attorney fees, to the purchase contract from the Reno Realty Syndicate, the continued collection of rentals and the payment of taxes, insurance, contract payments, etc., were all in accordance with the original agreement pleaded by plaintiff and found as a fact by the trial court. As to Davidson's actual sale of the two properties, Mrs. Streeter asserted her rights as soon as she learned thereof. The assignment is without merit.

6. Appellant attacks the decree as inequitable and faulty in many respects, but we do not find it so. (a) Under the facts as found by the court it properly awarded plaintiff the judgment for the excess of the receipts over the disbursements resulting from the handling of the property. (b) Under such facts the court also properly ordered a reconveyance. (c) The assignment to Mrs. Streeter of the benefits accruing from Davidson's sale of the property followed as a matter of course. (d) The rights of the third party purchasers without notice were recognized and protected in the findings, conclusions and judgment. (e) There was no error in the court's failing to award compensation to Davidson as trustee. He had repudiated the trust. Nor did he pray for compensation in his answer. (f) The judgment was not at fault in failing to require an accounting. In support of the contention that there was no concealment of any kind on the part of Davidson it is stated in his brief that he "kept complete and faithful records of checks, vouchers and business transactions affecting the property, all of which the evidence in this case plainly discloses." Such checks and vouchers, as well as tabulations of moneys disbursed and of the various receipts,

are matters appearing in the record and no purpose would be served by a further accounting.

Appellant also suggests that to permit this judgment to stand, based as it is largely upon the oral testimony of the plaintiff characterizing her conveyance as one in trust, is to put every attorney in great danger in the matter of all transactions with his clients, concluded, as such transactions are, within the four walls of the attorney's office. We see no such danger. Any attorney should be alert to the implications arising out of a transaction like the one here considered and under the circumstances outlined. If it were felt that the interests of the client justified a conveyance to the attorney, for purposes agreed upon between them or for an adequate consideration recognized as such (assuming the transaction to be a proper one under the circumstances), the attorney could protect both parties by a simple memorandum in writing. He could insist that she be advised in the premises by independent counsel.

Appellant attacks several of the findings as being without support in the evidence. We do not find them so. The asserted lack of evidentiary support is based largely upon Davidson's testimony to contrary facts, which testimony the trial court rejected. Its findings comprise 22 pages and follow faithfully the court's written decision. There the court reviewed the fiduciary relationship of the parties and said: "* * * it is clear that Mrs. Streeter was given to understand that Mr. Davidson would handle the property for her as trustee for her benefit."

We have given careful consideration to all the points raised by appellant and to the numerous authorities cited by him, but find further discussion unnecessary. The judgment and the order denying motion for new trial are affirmed with costs.

EATHER and MERRILL, JJ., concur.