CAPITAL INVESTORS CO., Plaintiff,

v.

EXECUTORS OF the ESTATE OF Arthur R. MORRISON,

Appellants,

and

Webb C. Hayes, III, Personal Representative of the Estate of Norman B. Frost, Deceased; Sadie R. Dreisen, Personal Representative of the Estate of Harry Dreisen, Deceased, Appellees.

CAPITAL INVESTORS, CO., Plaintiff,

v.

EXECUTORS OF the ESTATE OF Arthur R. MORRISON, Appellees,

and

Webb C. Hayes, III, Personal Representatives of the Estate of Norman B. Frost, Deceased; Sadie R. Dreisen, Personal Representative of the Estate of Harry Dreisen, Deceased, Appellants.

Nos. 85–2270, 85–2271.

United States Court of Appeals, Fourth Circuit.

Argued July 15, 1986.

Decided Sept. 12, 1986.

James van R. Springer (Dickstein, Shapiro & Morin; Forses Ramsey, David C. Canfield, Tobert, Smith, Fitzgerald & Stackhouse, on brief), for appellants/cross appellees.

Lee T. Ellis, Jr. (Baker & Hostetler, Leonard H. Freiman, on brief), for appellees/cross appellants.

Before WINTER, Chief Judge, and RUSSELL and WIDENER, Circuit Judges.

DONALD RUSSELL, Circuit Judge.

This is the sixth appeal of a diversity action arising out of events which occurred in 1963.[1] In May of that year, James Benn fraudulently persuaded Arthur R. Morrison to transfer a tract of Florida land to a company wholly owned by Benn, Capital Investors Company. Capital Investors in turn transferred the land in June of 1963 to Do-Mor Incorporated, a Florida Corporation, which gave in exchange for the land four promissory notes secured by a mortgage on the property. Benn moved these promissory notes through several corporations which he controlled and in 1965 endorsed two of the notes over to Norman Frost, who persuaded Harry Dreisen to hold the notes as his nominee. Taking the notes with notice that they were in default, Frost paid consideration totalling $150,000 for them. Subsequently, in 1969, Frost transferred an undivided half interest in

---

1. The earlier appellate opinions appear at 584 F.2d 652 (4th Cir.1978), 484 F.2d 1157 (4th Cir. 1973), 453 F.2d 1365 (4th Cir.1972), 387 F.2d 591 (4th Cir.1967), 360 F.2d 462 (4th Cir.1966).

these overdue notes to Dreisen in exchange for $75,000.[2]

In the meantime, Arthur Morrison's estate had brought suit seeking control of the Do-Mor notes on the theory that they were proceeds resulting from Benn's fraud. In 1971, the District Court for the Eastern District of Virginia agreed that a constructive trust should result from Benn's fraud, but in a subsequent hearing the court held that Frost and Dreisen had taken the notes free of the constructive trust. In 1973, we reversed that decision on the ground that Frost and Dreisen had taken the notes after they were overdue, could not be holders in due course, and as a result, had acquired only such rights as Benn, the defrauder, had in the notes. We then remanded the case for further proceedings, because Frost and Dreisen had not been parties to the original proceeding which had declared a constructive trust.

After remand, the district court ruled that a constructive trust did not result against Frost's and Dreisen's interests in the notes. In 1978, however, we reversed that decision under the law of the case doctrine, because Frost and Dreisen had produced no new evidence that the district court had not considered in its earlier decision. Consequently, the constructive trust that had been proper against Benn was also proper against Frost and Dreisen, who had only acquired Benn's title in the notes, and as a result, we again remanded the case for transfer of the notes or their proceeds to Morrison's estate. We instructed the district court, however, to credit Frost and Dreisen for the expenses that they had legitimately incurred in handling the notes.

Faced with this task, the district court enforced the constructive trust, but Dreisen and Frost had foreclosed on the notes against Do-Mor in 1973 and had sold the land that they had acquired through the foreclosure. The foreclosure and the years following required considerable litigation to clear title to the land, but this litigation was necessary to fully realize the value of the notes. Similarly, the land sales involved considerable expenses because of the need to divide the tract into parcels as well as the need for real estate brokerage services and legal advice. Consequently, when the district court enforced the constructive trust, it followed the instructions in our 1978 opinion and awarded Morrison's estate the amount realized from the land sales plus interest and less the legitimate expenses incurred by Frost and Dreisen in managing the constructive trust's corpus. In the district court's view, these legitimate expenses totalled $546,625.10 and included a credit of $74,015.00 for Dreisen's work overseeing and selling the constructive trust's real estate. The district court also ruled that since Dreisen and Frost each owned a half interest in the notes, each would be individually liable for one half of the judgment. Accordingly, the district judge entered judgment against Frost's estate[3] in the amount of $360,405.32 and against Dreisen's estate in the amount of $359,405.32.[4]

Arguing that the Frost estate should be jointly and severally liable for the total judgment, that the district court erroneously included certain items as legitimate expenses of the constructive trustees, and that the district court erroneously failed to award it taxable costs, Morrison's estate has brought this appeal. In a cross appeal, the estates of Frost and Dreisen assert that a 1964 Florida judgment bars the district court's decision and that the district court should have dismissed the action because Morrison's estate failed to timely substitute Frost's estate following Frost's death and never achieved personal jurisdiction over the personal representative of

---

**2.** Frost actually received more than $75,000 for Dreisen's half of the notes in 1969, because he reduced the purchase price to Dreisen as compensation for Dreisen's work as nominee.

**3.** Frost died in August 1973 while Dreisen passed away in June 1983.

**4.** By agreement of the parties Dreisen's estate received a $1000.00 credit on its portion of the judgment.

Frost's estate. Convinced that Morrison's estate should receive a more substantial judgment, we reverse in part and affirm in part.

In its first argument, Morrison's estate maintains that Frost's sole ownership of the notes from 1965 to 1969 should render his estate jointly and severally liable for the entire judgment. Because Morrison's estate has a right to a money judgment against Frost's estate for property received to the extent that it cannot trace and recover the proceeds of the notes, we agree.

■ Our 1973 and 1978 opinions held that because they were not holders in due course, Frost and Dreisen acquired only such title as Benn had in the notes and as a result held the notes as constructive trustees. *Capital Investors v. Executors of Morrison*, 484 F.2d 1157 (4th Cir.1973), and 584 F.2d 652 (4th Cir.1978). Frost held all of the notes alone from 1965 to 1969, however, and even at that time he held the notes as a constructive trustee under a duty to return the notes to Morrison's estate. *United States v. Fontana*, 528 F.Supp. 137, 143–46 (S.D.N.Y.1981); 5 Scott on Trusts § 462.4 (1967).[5] When a plaintiff succeeds in enforcing a constructive trust, moreover, courts treat him as if he were enforcing a duty to deliver property under an express trust, G.G. Bogert, The Law of Trusts and Trustees § 471, at 6–7 (2d ed. 1982), and as a result, an enforcing plaintiff has the right to receive the property or its proceeds from the constructive trustee, *Soderstrom v. Kungsholm Baking Co.*, 189 F.2d 1008, 1013 (7th Cir.1951); *White v. Roberts*, 637 S.W.2d 332 (Mo.Ct. App.1982); G.G. Bogert, The Law of Trusts and Trustees § 866 (2d ed. 1982), as well as the right to receive a money judgment for property received against the constructive trustee. *Meadows v. Bierschwale*, 516 S.W.2d 125 (Tex.1974); *Baron Bros. Co. v. Stewart*, 182 F.Supp. 893 (S.D.N.Y.1960); Restatement of Restitution § 202 (1937).

In fact, where it is necessary to make the successful plaintiff whole, courts have been quite willing to allow the plaintiff to recover a portion of the trust property or its proceeds along with a money judgment for the remainder. *Meadows v. Bierschwale*, 516 S.W.2d 125 (Tex.1974); *Church v. Bailey*, 90 Cal.App.2d 501, 203 P.2d 547 (1949); *Van Blarcom v. Van Blarcom*, 124 N.J. Eq. 19, 199 A. 383 (1938), G.G. Bogert, The Law of Trusts and Trustees § 867, at 72–73 (2d ed. 1982).

■ In this case, there is no question that Morrison's estate will recover the proceeds from the half of the notes that Frost held. This is because Frost segregated from his other funds his land sales receipts which represent the proceeds from that half of the notes. Morrison's estate may have a more difficult time recovering on the other half of the notes which passed from Benn to Frost to Dreisen, however, because Dreisen did not segregate his land sales receipts and his estate may be insufficient to satisfy his half of the judgment. In this situation, a money judgment against Frost's estate making it jointly and severally liable for the entire judgment is appropriate to make Morrison's estate whole. This is because such a judgment is actually a judgment against Frost's estate for property received and will allow Morrison's estate to recover from Frost's estate whatever proceeds it cannot trace into and recover from Dreisen's estate. *See.* G.G. Bogert, The Law of Trusts and Trustees § 867, at 74–78 (2d ed. 1982).

This type of judgment is appropriate, because a constructive trust is really a tool of equity to prevent unjust enrichment. *American National Bank v. Federal Dep. Ins. Corp.*, 710 F.2d 1528, 1541 (11th Cir. 1983); *Burgess v. Williamson*, 506 F.2d 870, 876 (5th Cir.1975). In 1965, Frost purchased the notes from Benn subject to the Morrison estate's constructive trust. If

---

**5.** "Where the title to property is acquired by one person under such circumstances that he is under a duty to surrender it, a constructive trust immediately arises. ... It would seem that there is no foundation whatever for the notion that a constructive trust does not arise until it is decreed by a court. It arises when the duty to make restitution arises, not when that duty is subsequently enforced." 5 Scott on Trusts § 462.4 (1967).

Morrison's estate had enforced the trust at that time, Frost would have had to return all of the notes to Morrison's estate. Instead, Frost was able to sell a half interest in the notes in 1969 so that Frost was unjustly enriched to the extent that he sold something he never owned. Accordingly, the remedy of a judgment making Frost's estate jointly and severally liable for the entire judgment is appropriate to insure that Morrison's estate is made whole.[6]

■ While recognizing the possibility that Frost might be jointly and severally liable for the entire judgment, the district court denied such relief in part because the Morrison estate delayed until 1985 before pressing for joint and several liability. While it is true that 1985 was years after the beginning of the litigation, 1985 was the year that the district court was first able to put together an accounting for the trust and the first year that the question of joint and several liability could become an issue. Furthermore, Morrison's estate aggressively pursued both Frost and Dreisen for years to recover its loss, and this pursuit provided ample notice to both Frost and Dreisen that the courts might eventually find them individually liable for the entire loss. Accordingly, we conclude that Frost's estate is jointly and severally liable for the entire judgment.

Although Frost's estate is jointly and severally liable for the entire judgment, Morrison's estate also argues that it is entitled to a larger judgment. Morrison's estate reaches this conclusion, because in its view, the district court was overly generous in determining which expenses to allow the constructive trustees to credit against the judgment. Our 1978 opinion, however, directed the district court to credit against its final judgment the legitimate expenses of the trustees, 584 F.2d at 657, and after considering the objections of Morrison's estate we have concluded that the district court correctly ruled on almost all of the constructive trustees' requested expenses. On the question of whether Dreisen's estate may properly recover a $74,015 fee for Dreisen's work managing the Florida tract, however, we agree with the appellant that the district court erred in allowing such a large fee.

■ The district court awarded such a large fee, because it believed that Dreisen had done an expert job in managing and selling the Florida tract. Real estate brokers did the actual selling of the land, however, and lawyers provided the legal advice necessary to finalize the deals. A purchaser of overdue notes with notice of their suspicious origins, moreover, should not be able to earn substantial income by subdividing and converting the land securing the notes and by frustrating for years the efforts of the rightful owner to secure the land's return. Acting as Frost's nominee, Dreisen was involved in the acquisition of the tainted notes from the first, and even when he purchased his half interest in the notes from Frost the notes were long overdue and Dreisen could not take as a holder in due course. Although courts have divided on the issue of whether to allow a management fee in similar situations, *see Davidson v. Streeter,* 68 Nev. 427, 234 P.2d 793 (1951) and *Stevens v. Stevens,* 97 N.H. 135, 82 A.2d 418 (1951), a noted expert has written that "the better view would seem to be that the constructive trustee should be denied compensation for his services in managing, maintaining or improving the property, in order to discourage unscrupulous persons from securing or retaining property to which they are not equitably entitled...." G.G. Bogert, The Law of Trusts and Trustees § 472, at 59 (2d ed. 1982). We find this rule similarly appealing, particularly in a case such as this where the constructive trustee is not without fault, and so we reverse this portion of the district court's decision. Because the $74,015 credit may have included more than simply a fee for Dreisen's management of the property, however, we

6. For a discussion of the evidence which indicates that Frost must have known of the likelihood that the notes he purchased from Benn in 1965 were tainted with fraud *see Capital Investors Co.,* 484 F.2d at 1164–65.

remand for the district court to credit Dreisen's estate for such amounts as were included in the fee that Dreisen's estate can establish Dreisen actually spent in connection with litigation not related to the present litigation and necessary to the protection of the trust property.

Finally,[7] Morrison's estate also argues that the district court should have awarded it taxable costs under Federal Rule of Civil Procedure 54(d). The district court neither awarded such costs to Morrison's estate nor explained its decision not to award such costs. Furthermore, this occurred even though the district court might properly have considered Morrison's estate to be the prevailing party in this litigation and courts should ordinarily award costs to the prevailing party. Fed.R.Civ.P. 54(d), *Institutionalized Juveniles v. Secr. of Public Welfare*, 758 F.2d 897, 926 (3rd Cir.1985). Because we are remanding this action, however, the district court may now reconsider its decision not to award costs and, if it feels it appropriate, award them to Morrison's estate.

In their cross appeal, Dreisen's and Frost's estates first maintain that a 1964 Florida quiet title judgment bars Morrison's estate from asserting any claim to the Florida tract or its proceeds. Our 1973 opinion, however, specifically addressed and dismissed this argument. 484 F.2d at 1163. Accordingly, this portion of the cross appeal is without merit.

■ In a similar fashion, the defendants' other arguments are also without merit. Frost's estate first argues that it is exempt from the judgment, because Morrison's estate failed to timely substitute Frost's estate following proper notice of Frost's death in 1973. *See* Fed.R.Civ.P. 25(a)(1). Morrison's estate did file a motion for substitution in 1974 more than Rule 25(a)(1)'s limit of 90 days following the Frost estate's filing of a suggestion of death, but it simultaneously filed a motion under Rule 6(b) for an enlargement of time. Before the district court reached that motion, however, it ruled in favor of Frost's estate and Dreisen on the merits, and so it never ruled on the motion for an enlargement of time. In 1978 we reversed the decision of the district court on the merits, and after remand, Frost's estate argued that the substitution had been ineffective. Observing that Frost's estate had not originally opposed the motion for an enlargement of time and that Frost's estate had suffered no prejudice from the oversight but had continued representing its interests through court appearances and responses to pleadings and motions, the district court correctly ruled that the substitution was proper. *See Simmons v. King*, 333 F.2d 178, 180 (4th Cir.) *cert. denied*, 379 U.S. 932, 85 S.Ct. 331, 13 L.Ed.2d 343 (1964); Wright & Miller, Federal Practice and Procedure: Civil § 1165 (1969).

■ Relatedly, the district court also correctly ruled that Hayes, the representative of Frost's estate, had waived any argument he had that personal service upon him was insufficient. Hayes is a partner in the firm conducting the litigation for Frost's estate, and he must have known of the motion for substitution and the continued litigation. After Morrison's estate's motion for substitution, the case went to the Fourth Circuit and back to the district court, and the district court granted the motion for substitution. Then, five years after the motion for substitution, Hayes challenged personal service even though the estate's attorney, with whom he worked, had participated in each proceeding. In that circumstance, Hayes certainly waived any challenge he had to personal jurisdiction. *Cf. Bethlehem Steel Corp. v. Devers*, 389 F.2d 44 (4th Cir.1968).

In sum, the district court correctly entered judgment in favor of Morrison's es-

---

7. The Morrison estate also argues that it is entitled to recover its attorney fees from the estates of Frost and Dreisen, that the constructive trustees are liable for the current fair market value of the Florida tract, and that the district court improperly calculated the investment return that the constructive trustees received on the land sales receipts. We find, however, that these arguments are without merit.

tate, but erred when it did not make Frost jointly and severally liable for the entire judgment and when it awarded the constructive trustees a large credit for Dreisen's work in managing the trust's assets. Accordingly, the judgment of the district court is

AFFIRMED in Part, REVERSED In Part, and REMANDED.