177 P.3d 1060 (2008)
In the Matter of the JANE TIFFANY LIVING TRUST 2001, U/A/D NOVEMBER 5,, 2001.
William Ricks, Individually, Appellant,
v.
Phillip J. Dabney, Trustee of the Trust of Jane Tiffany, Respondent.
In the Matter of the Jane Tiffany Living Trust 2001, u/a/d November 5, 2001.
William Ricks, Individually, Appellant,
v.
Phillip J. Dabney, Trustee of the Trust of Jane Tiffany, Respondent.
Josephine Ricks, Appellant,
v.
Jane Tiffany Living Trust 2001, a/k/a Peninnah J. Tiffany Living Trust, and Phillip J. Dabney, Trustee of the Peninnah J. Tiffany Living Trust, Respondents.
Nos. 45248, 45874, 46983.
Supreme Court of Nevada.
March 6, 2008.
*1061 Kenneth G. Frizzell III, Las Vegas, for Appellants.
Goldsmith & Guymon, P.C., and Dara J. Goldsmith, Las Vegas, for Respondents.
BEFORE HARDESTY, PARRAGUIRRE and DOUGLAS, JJ.

OPINION
By the Court, DOUGLAS, J.
In these consolidated appeals, we consider whether an attorney, whose law firm partner prepares an estate plan for a client who names the attorney as a beneficiary, has overcome the presumption of undue influence. We further consider whether violations of the Nevada Rules of Professional Conduct afford a private right of action. Finally, we address whether the district court erred in dismissing a civil action for constructive trust that was initiated after trust proceedings had already taken place.
In considering whether the attorney in this case has overcome the presumption of undue influence, we determine that such a showing must be made by clear and convincing evidence, and we conclude that clear and convincing evidence demonstrates that the client in this case was not unduly influenced in naming the attorney as the primary beneficiary of her estate. Further, we reiterate our holding in Mainor v. Nault that violations of Nevada's professional conduct rules do not give rise to a private right of action.[1] Lastly, we conclude that the district court did not err in dismissing the civil action for constructive trust that was instituted after the trust proceedings had already taken place.

FACTS AND PROCEDURAL HISTORY
These consolidated appeals concern the estate of Jane Tiffany. Before her death, to avoid probate, Jane established a living trust within which she could place all of her assets. But before arranging her living trust, Jane quitclaimed her house to her nephew's wife, appellant Josephine Ricks, and to herself as joint tenants with rights of survivorship.
*1062 Eventually, Jane had her estate plan prepared by Kenneth A. Woloson, a law firm partner of Jane's friend, respondent attorney Phillip J. Dabney. While her estate plan was being prepared, Jane asked Josephine to quitclaim her interest in the house to Jane's living trust. Josephine agreed because Jane had allegedly promised her that she would receive the house upon Jane's death; as a result, Josephine quitclaimed her interest in the house to the living trust.
In executing her living trust, Jane listed Dabney as the beneficiary of her house. Josephine's husband, appellant William Ricks, attempted to overturn Dabney's designation as a beneficiary of the estate in a trust proceeding after Jane's death. William argued that Dabney's designation was a product of undue influence, as Dabney's law partner had prepared Jane's estate plan. The district court ultimately determined that Dabney rebutted the presumption that he unduly influenced Jane into naming him as a beneficiary of Jane's estate. Thereafter, based on Dabney's motion for attorney fees and costs, the district court awarded $51,635.35 to Dabney.
Subsequently, Josephine instituted an action seeking relief in the form of a constructive trust in her favor, consisting of Jane's house.[2] Dabney moved to have the district court consolidate Josephine's action with the trust proceeding, which already was on appeal, and to dismiss Josephine's action. At the hearing on Dabney's motions for consolidation and dismissal, in addition to considering Dabney's motions, the district court made determinations with respect to two documents that Josephine had filed: (1) the district court struck Josephine's amended complaint filed that day, based on her failure to request leave to file it; and (2) the district court denied Josephine's pending motion for summary judgment. The district court also granted Dabney's motions, consolidating Josephine's action with the trust proceeding and dismissing her action. The district court's dismissal was based on Josephine's failure to file a creditor's claim during the trust proceeding; the district court further concluded that because Josephine had previously filed a notice of lis pendens during the trust proceeding, she had already "had her day in court." These consolidated appeals followed.

DISCUSSION
In these consolidated appeals, we address and consider whether Dabney rebutted the presumption of undue influence that arose when his law firm partner, Woloson, prepared Jane's living trust naming Dabney as the beneficiary of Jane's house, whether a violation of SCR 158[3] provided a private right of action for setting aside Jane's living trust, and whether the district court erred when it dismissed Josephine's constructive trust action.
Undue influence
William argues that the evidence does not support the district court's conclusion that Dabney rebutted the presumption of undue influence that arose when Woloson prepared Jane's living trust naming Dabney as the beneficiary for Jane's house. We disagree.
A presumption of undue influence arises when a fiduciary relationship exists and the fiduciary benefits from the questioned transaction.[4] A fiduciary relationship *1063 between Dabney and Jane existed in this case because Dabney's law firm partner, Woloson, had prepared Jane's living trust, which benefited Dabney in that he was the beneficiary of Jane's house.[5] Thus, when Dabney substantially benefited from Jane's estate plan, a presumption of undue influence arose.
We have previously noted, in the context of an attorney obtaining a business advantage from a client, that a presumption of impropriety may be overcome only by clear and satisfactory, evidence.[6] As it appears that this court has never precisely defined "clear and satisfactory" evidence, we clarify that "clear and satisfactory" evidence is equivalent to "clear and convincing"[7] evidence. Indeed, in In re Drakulich, we recognized that clear and convincing evidence must produce "satisfactory" proof that is
so strong and cogent as to satisfy the mind and conscience of a common man, and so to convince him that he would venture to act upon that conviction in matters of the highest concern and importance to his own interest. It need not possess such a degree of force as to be irresistible, but there must be evidence of tangible facts from which a legitimate inference . . . may be drawn.[8]
Thus, regardless of the terminology used whether "clear and satisfactory" or "clear and convincing"as the Tennessee Court of Appeals has noted, "the evidence must eliminate any serious or substantial doubt about the correctness of the conclusions to be drawn from the evidence."[9]
Only this heightened standard can overcome the presumption of undue influence[10] because quinder our case law, when an attorney deals with a client for the former's benefit, the attorney must demonstrate by a higher standard of clear and satisfactory evidence that the transaction was fundamentally fair and free of professional overreaching."[11] This higher standard ensures that the law will protect those who cannot protect themselves.[12]
Having reviewed the record, we conclude that the district court properly found that *1064 Dabney had rebutted the presumption of undue influence with clear and convincing evidence. The evidence contained within the record establishes that Woloson prepared Jane's living trust in accordance to her instructions and desires and that Jane's wishes were not a product of Dabney's undue influence.[13] Accordingly, we conclude that the evidence supports the district court's finding of no undue influence.
Violation of SCR 158
William argues that because Dabney and Woloson violated SCR 158, the district court should have set aside Jane's living trust. This argument is unpersuasive.
Before being repealed, SCR 158(3) provided in pertinent part that "[a] lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer as parent, child, sibling, or spouse any substantial gift from a client, including a testamentary gift, except where the client is related to the donee." Further, before being repealed, SCR 160(1) provided in pertinent part that "[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 157, 158(3), 159 or 168."[14]
Even though SCR 158 and 160 apparently were violated when Woloson prepared Jane's living trust benefiting Dabney, these per se violations did not afford William a private right of action to set aside Jane's living trust.[15] In Mainor, we held that an attorney's violation of the professional conduct rules does not create a private right of action for civil damages, but that a violation is relevant to the standard of care owed by an attorney.[16] Accordingly, we conclude that the district court did not abuse its discretion in refusing to set aside Jane's living trust despite the apparent violations of SCR 158 and 160. In reaching this decision, we reiterate that any violation of the Nevada Rules of Professional Conduct does not create a private right of action.[17]
Dismissal of Josephine's civil action
Josephine argues that the district court erred in dismissing her civil action for constructive trust. We conclude that the district court did not err in dismissing Josephine's civil action.
In dismissing Josephine's civil action, the district court determined that Josephine was time-barred from bringing her claim be cause she did not file a creditor's claim during the trust proceeding; the district court further concluded that because Josephine had previously filed a notice of lis pendens, she had already "had her day in court.[18]
*1065 NRS 164.025(3), which discusses filing a claim against a trust estate, provides as follows:
A person having a claim, due or to become due, against a settlor or the trust must file the claim with the trustee within 90 days after the mailing, for those required to be mailed, or 90 days after publication of the first notice to creditors, Any claim against the trust estate not filed within that time is forever barred. After the expiration of the time, the trustee may distribute the assets of the trust to its beneficiaries without personal liability to any creditor who has failed to file a claim with the trustee.
In Pahlmann v. First National Bank of Nevada, we stated that "not all rights asserted against a decedent are included within the bar of non-claim.'"[19] We further concluded that because property held by a decedent in trust "`does not form a portion of the assets of the estate, its recovery in no [way] diminishes the estate and a claim to it is not a claim against the property constituting the estate.'"[20] While our decision in Pahlmann implicated NRS 147.040, which provides time limits for filing claims against decedents who distribute their estates through a will, our holding in Pahlmann applies to the instant appeal as to whether Josephine is a creditor of Jane's estate under NRS 164.025(3).
Here, Josephine was attempting to recover property that she believed was being held in Jane's living trust; she was seeking payment of her claim. Thus, Josephine was a creditor of Jane's estate, and the district court did not err in determining that Josephine was time-barred from bringing her claim under NRS 164.025(3).
Therefore, we conclude, that the district court did not err in dismissing Josephine's civil action because Josephine should have brought her constructive trust or fraud claim in the earlier trust proceeding by filing a petition for constructive trust under NRS 164.033.[21] Even though NRS 164.033(1)(a) is permissive on its face, Josephine's rights in Jane's house via constructive trust were adjudicated in the trust proceeding, along with William's rights. To protect her claimed rights, Josephine should have petitioned the district court under NRS 164.033 when it was considering whether Dabney was entitled to the house.[22] Even though the district court determined that Josephine was not a party to the trust proceeding, that determination was caused by Josephine's failure to file a petition under NRS 164.033.
Accordingly, we conclude that the district court did not err in dismissing Josephine's civil action.[23]

CONCLUSION
We conclude that the district court's finding as to Dabney rebutting the presumption of undue influence was supported by clear and convincing evidence in the record that he *1066 did not unduly influence Jane into naming him as a beneficiary of her estate. Further, we conclude that even though the Nevada Rules of Professional Conduct were apparently violated when Woloson prepared Jane's living trust benefiting Dabney, these violations did not afford William a private right of action to set aside Jane's living trust. Lastly, we conclude that the dismissal of Josephine's civil action was appropriate. Accordingly, we affirm the orders of the district court.[24]
We concur: HARDESTY and PARRAGUIRRE, JJ.
NOTES
[1] 120 Nev. 750, 768-69, 101 P.3d 308, 320-21 (2004).
[2] Before Jane's house became an asset of Jane's living trust, Jane and Josephine owned the house as joint tenants. Josephine had quitclaimed her interest in the house to Jane's living trust because Jane had allegedly promised her that she would receive the house upon Jane's death.
[3] The rules governing professional conduct were substantially revised after these cases had commenced. Former SCR 158 is now Nevada Rule of Professional Conduct 1.8. Because the former version applied at all times pertinent to this matter, we will use the former version in this opinion.
[4] See Peardon v. Peardon, 65 Nev. 717, 767, 201 P.2d 309, 333 (1948) (holding that the doctrine of undue influence "reaches every case, and grants relief `where influence is acquired and abused, or where confidence is reposed and betrayed' . . . but is applied when necessary to conveyances, executory and executed contracts, and wills"); see also Schmidt v. Merriweather, 82 Nev. 372, 376, 415 P.2d 991, 993 (1966) (holding that "`where confidential relations between parent and child are shown to have existed and where a conveyance of property is made by the weaker to the dominant party, a presumption arises that the conveyance was obtained through the undue influence of the dominant party'" (quoting Walters v. Walters, 26 N.M. 22, 188 P. 1105, 1106 (1920)) ).
[5] See SCR 158(3); SCR 160(1).
[6] In re Singer, 109 Nev. 1117, 1120-21, 865 P.2d 315, 317 (1993) (holding that "[i]n any transaction in which an attorney is charged with obtaining a business advantage from the client, there is a presumption of impropriety which may be overcome only [by] clear and satisfactory evidence that the transaction was fundamentally fair, free of professional overreaching, and fully disclosed").
[7] See, e.g., Cora v. Strock, 441 N.W.2d 392, 395 (Iowa Ct.App.1989) (stating that the undue influence presumption can be rebutted by "`clear, satisfactory, and convincing proof'" quoting Luse v. Grenko, 251 Iowa 211, 100 N.W.2d 170, 172 (Iowa 1959)); see also Davidson v. Streeter, 68 Nev. 427, 440, 234 P.2d 793, 799 (1951) (stating that "the presumptive invalidity of [a] transaction on the ground of constructive fraud, where an attorney deals with his client for the former's benefit, can be overcome only by the clearest and most satisfactory evidence").
[8] 111 Nev. 1556, 1566, 908 P.2d 709, 715 (1995) (quoting Gruber v. Baker, 20 Nev. 453, 477, 23 P. 858, 865 (1890)).
[9] M.L.J. v. Johnson, 121 S.W.3d 378, 380 (Tenn. Ct.App.2003).
[10] See In re Estate of Hood, 955 So.2d 943, 946 (Miss.Ct.App.2007) (holding that once the presumption of undue influence is established, "the burden shifts to the fiduciary to rebut the presumption by clear and convincing evidence"); In re Guardianship of Knepper, 856 N.E.2d 150, 154 (Ind.Ct.App.2006) (holding that a fiduciary may rebut the presumption of undue influence by establishing clear and convincing evidence that "she acted in good faith, did not take advantage of her position of trust, and that the transaction was fair and equitable"); Parish v. Kemp, 179 S.W.3d 524, 531 (Tenn.Ct.App.2005) (holding that once a presumption of undue influence arises, the dominant party must establish by clear and convincing evidence that the transaction at issue was fair).
[11] Williams v. Waldman, 108 Nev. 466, 472, 836 P.2d 614, 618 (1992) (citing Davidson v. Streeter, 68 Nev. 427, 440, 234 P.2d 793, 799 (1951); Moore v. Rochester W.M. Co., 42 Nev. 164, 176, 174 P. 1017, 1021 (1918)).
[12] Madden v. Rhodes, 626 So.2d 608, 619 (Miss. 1993); see also Eastwood v. National Enquirer, Inc., 123 F.3d 1249, 1252 n. 5 (9th Cir.1997) (recognizing that "`clear and convincing' is a means of protecting society from the consequences of grave decisions too lightly reached").
[13] The evidence in the record reveals that (1) Jane was a determined and alert lady; (2) she insisted on Woloson's assistance in preparing her living trust, which eventually benefited Dabney; (3) she handwrote two notes to Woloson that expressed her gratitude towards Dabney and expressed her desire to make Dabney a beneficiary in her living trust; (4) she intended to bequeath her house to the Krugers (her friends) and not to William or Josephine when Jane first consulted with Woloson for her estate plan; (5) eventually, Jane wanted Dabney to become her successor trustee because the Krugers were having health problems; (6) Woloson addressed his concerns to Dennis Haney (another law firm partner) about helping Jane with her estate planning after finding out that Jane wanted Dabney to be a beneficiary; (7) Lamar Briley (Jane's friend) signed a letter confirming that he knew Jane and that the living trust reflected Jane's intentions and desires; and (8) Dabney had initially agreed to be the trustee for Jane's living trust and that he expressly declined to be a beneficiary,
[14] Former SCR 160 is now Nevada Rule of Professional Conduct 1.10. Because the former version applied at all times pertinent to this matter, we will use the former version in this opinion.
[15] See Mainor v. Nault, 120 Nev. 750, 768-69, 101 P.3d 308, 320-21 (2004).
[16] Id.
[17] Id.
[18] We note that Josephine argues on appeal that Dabney should have been equitably and judicially estopped from asserting that she "had her day in court." Because Josephine did not object to this assertion in the district court on equitable or judicial estoppel grounds, we do not consider this issue on appeal. See Carson Ready Mix v. First Natl. Bk., 97 Nev. 474, 476, 635 P.2d 276, 277 (1981) (holding that the failure to object or request a special instruction precludes appellate review).
[19] 86 Nev. 151, 156, 465 P.2d 616, 619 (1970) (quoting Reed v. Dist. Court, 75 Nev. 338, 341, 341 P.2d 100, 101 (1959)).
[20] Id.
[21] In pertinent part, NRS 164.033 provides:

1. The trustee or an interested person may. petition the court to enter an order:
(a) If the trustee is in possession of, or holds title to, property and the property or an interest in it is claimed by another.
(b) If the trustee has a claim to property and another holds title to or is in possession of the property.
(c) If property of the trust is subject to a claim of a creditor of the settlor of the trust.
2. The court shall not grant a petition under this section if it determines that the matter should be determined by civil action.
[22] The record reveals that Josephine was clearly aware of the trust proceeding because Josephine had filed a notice of lis pendens during the trust proceeding; the district court had expunged Josephine's notice of lis pendens on the ground that she was not a party to the trust proceeding.

In reaching our decision, we note that Josephine could have petitioned the district court under NRS 164.033 to become a party in the trust proceeding.
[23] Because we have concluded that the dismissal of Josephine's civil action was appropriate, the issues as to whether the district court erred in consolidating Josephine's civil action with the trust proceeding, whether the district court erred in denying Josephine's motion for summary judgment, and whether the district court erred in striking Josephine's amended complaint are moot.
[24] While William has noted the district court's (1) decision to award attorney fees and costs to Dabney, (2) order denying a demand for jury trial, (3) order denying a motion to stay proceedings, and (4) order granting a motion for a protective order, he has not presented any arguments on appeal as to these decisions. Accordingly, we do not address these issues.