129 Nev., Advance Opinion 92

# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| IN THE MATTER OF THE ESTATE OF ARLAN EDWARD BETHUREM, DECEASED. | No. 57749 |
| INES CARAVEO, Appellant, vs. ANITA HERRERA PEREZ; SANDRA KURTZ; AND VICKI S. PRESTON, Respondents. | |

FILED

NOV 2 7 2013



TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

Appeal from a district court order invalidating a will and directing distribution of property according to a former will. Second Judicial District Court, Washoe County; Connie J. Steinheimer, Judge.

*Reversed and remanded.*

Hawkins Folsom & Muir and Gordon R. Muir, Reno,
for Appellant.

Holland & Hart LLP and Richard L. Elmore, Tamara Reid, and J. Robert Smith, Reno,
for Respondents Anita Herrera Perez and Sandra Kurtz.

John F. Kirsch, Reno,
for Respondent Vicki S. Preston.

J. Douglas Clark, Reno,
for Amicus Curiae State Bar of Nevada, Probate and Trust Law Section.

BEFORE THE COURT EN BANC.

SUPREME COURT
OF
NEVADA



(O) 1947A

3/10/14: Corrected per letter to publishers. CT

13-35852

## OPINION

By the Court, PARRAGUIRRE, J.:

In this appeal, the beneficiary of a will challenges a district court order invalidating the will as the product of the beneficiary's undue influence. A rebuttable presumption of undue influence is raised if the testator and the beneficiary shared a fiduciary relationship, but undue influence may also be proved without raising this presumption. As a matter of first impression in Nevada, we hold that in the absence of a presumption, a will contestant bears the burden of proving undue influence by a preponderance of the evidence. Because we conclude that the respondent-will contestants failed to meet this burden of proof, we reverse the district court's order invalidating the will as the product of undue influence.

### FACTS AND PROCEDURAL HISTORY

Arlan Bethurem died in December 2008. The special administrator of his estate petitioned to have the estate set aside without administration according to Arlan's[1] 2007 will. Arlan's stepdaughters opposed the petition, arguing that a beneficiary of the 2007 will had unduly influenced Arlan. The testimony before the probate commissioner revealed the following facts.

Arlan married his wife Bertha in 1971, and the couple resided in Reno. Bertha had three children from a prior marriage, respondents Sandra Kurtz and Anita Herrera Perez, and a son who is not a party to this action. Bertha and Arlan raised the three children together. In 2004,

---

[1]For clarity and to be consistent with the parties' briefs, we use individuals' first names throughout this opinion.

 

Arlan executed a will bequeathing his estate to Bertha. In the event that Bertha did not survive him, Arlan's will divided his estate equally between his three stepchildren and a granddaughter.

In late 2005, Bertha became ill and Arlan sought assistance with her care. Bertha's sister, appellant Ines Caraveo, traveled to Reno from her home in Texas to help care for Bertha. Upon arrival in Reno, Ines asked Sandra and Anita to assist with Bertha's care, either physically or financially. Neither was able to do so. Ines became angry with Sandra and Anita for failing to care for Bertha. Sandra and Anita both testified that Bertha said in telephone conversations that she did not like how Ines was speaking to Arlan about their inability to provide care.

Bertha died in May 2006. Ines accompanied Arlan to make funeral arrangements with a priest. The priest testified that Arlan was grief-stricken but lucid at the time of this meeting, and that Arlan expressed disappointment that Sandra and Anita had not been more supportive during Bertha's illness. Sandra and Anita attended Bertha's funeral, where they felt ostracized by family members and other funeral attendants. After Bertha's funeral, Ines returned to Texas but stayed in contact with Arlan through daily telephone conversations. Arlan did not speak to Sandra for several months or to Anita for more than a year. Although Arlan was devastated by the loss of his wife, he continued to drive, go to work, and otherwise provide for his own daily needs.

In April 2007, Arlan contacted his friend and accountant Vicki Preston to prepare a new will. Preston testified that Arlan came to her office alone and appeared in good mental condition. Preston suggested that Arlan speak with an attorney, but he declined to do so and instead provided Preston with handwritten changes to a prior will. Preston

SUPREME COURT
OF
NEVADA

(O) 1947A

testified that these changes were made in Arlan's handwriting. These changes named Ines and Arlan's sister as beneficiaries and expressly disinherited his stepchildren. Preston further testified that she did not speak to Ines about the will and prepared the will according to Arlan's written instructions. After Preston prepared the will, Arlan picked up Preston and Preston's friend in his truck, and they drove to a bank to execute the will before a notary. Preston and her friend served as witnesses to the will. Both witnesses testified that Arlan expressed disappointment that Sandra and Anita had not helped care for Bertha and that he said he wanted to change his will because of their treatment of Bertha while she was ill. Arlan also conveyed title of his home in Reno to himself and Ines as joint tenants with right of survivorship and added Ines to some of his bank accounts.

A month later, Sandra visited Arlan. She later testified that he was very depressed during her visit. After Sandra's departure, Arlan attempted suicide. Sandra then invited Arlan to stay with her in Oregon, and he did so for over two weeks. During his time in Oregon, Arlan called Ines from Sandra's home nearly every day. After spending approximately two weeks in Oregon, Arlan returned to Reno for work.

In October 2008, Arlan lost his job. He decided to sell his home and move to Oregon to be with Sandra. Ines did not want her name removed from the property's title but was willing to sign any documents related to the sale. Around the same time, Arlan expressed regret to Sandra about changing his will. Arlan told Sandra that he changed the will because he was angry with her. Sandra testified that Arlan had a history of changing his will when he was angry with family members.

Arlan named Sandra and Ines as beneficiaries to a savings account of approximately $84,000.

About two months later, Arlan committed suicide. Arlan's home was in escrow at the time of his death, and after closing, Ines received the sale proceeds. Ines and Sandra received equal shares of the $84,000 savings account. Following Arlan's death, Preston was appointed special administrator and petitioned to set aside Arlan's estate without administration to Ines and Arlan's sister as provided in the 2007 will. Sandra and Anita opposed the petition, arguing that Ines had unduly influenced Arlan.

After hearing the testimony summarized above, the probate commissioner found that (1) Preston confirmed Ines made statements to Arlan about Sandra and Anita failing to care for Bertha, (2) Ines "enlisted" Preston to prepare the 2007 will, (3) "Ines mounted a campaign to turn Bertha and Arlan against Bertha's daughters . . . by telling Arlan that the children were not doing enough to help their gravely ill mother," and (4) "Ines took every opportunity to remind Arlan and Bertha that Bertha's children were unwilling to help." The probate commissioner concluded that Ines had unduly influenced Arlan by fostering ill will between him and his stepdaughters and the 2007 will was the product of this undue influence. The probate commissioner recommended that the 2004 will be admitted to probate.

On review, the district court found that no evidence supported the probate commissioner's finding that Preston confirmed Ines made statements to Arlan about Sandra and Anita. The district court also concluded that the probate commissioner's finding that Ines enlisted Preston to prepare Arlan's 2007 will was clearly erroneous. However, the

district court found these errors harmless. The district court affirmed the probate commissioner's recommendation, explaining that the evidence supported the commissioner's findings that Ines mounted a campaign to turn Arlan and Bertha against Sandra and Anita by telling Arlan that his stepdaughters were unwilling to help care for Bertha. Ines now appeals.

## DISCUSSION

Below, we describe the current status of Nevada's undue influence law, discuss the appropriate burden and quantum of proof in a will contest on the grounds of undue influence, and address whether the evidence supports a finding of undue influence in this case.[2]

*Undue influence law in Nevada*

In order to establish undue influence under Nevada law, "it must appear, either directly or by justifiable inference from the facts proved, that the influence . . . destroy[ed] the free agency of the testator." *In re Estate of Hegarty*, 46 Nev. 321, 326, 212 P. 1040, 1042 (1923). The influence that may arise from a family relationship is only unlawful if it overbears the will of the testator. *Id.* at 328, 212 P. at 1042. Moreover, the fact a beneficiary merely possesses or is motivated to exercise influence is insufficient to establish undue influence. *Id.* at 326, 212 P. at 1042. Finally, a will cannot be invalidated simply "because it does not conform to ideas of propriety." *Id.* at 327, 212 P. at 1042.

---

[2]In addition to these issues, Sandra and Anita argue we lack jurisdiction over this appeal because the district court's order only invalidated Arlan's 2007 will, rather than setting aside an estate less than $100,000 or distributing property. *See* NRS 155.190(1)(c), (l). However, the commissioner recommended admitting the 2004 will to probate, and the district court affirmed the commissioner's recommendation. Therefore, we have jurisdiction pursuant to NRS 155.190(1)(b).



We have held that "[a] presumption of undue influence arises when a fiduciary relationship exists and the fiduciary benefits from the questioned transaction." *In re Jane Tiffany Living Trust 2001*, 124 Nev. 74, 78, 177 P.3d 1060, 1062 (2008) (addressing undue influence in the context of an attorney receiving an inter vivos transfer from a client). Once raised, a beneficiary may rebut such a presumption by clear and convincing evidence. *Id.* at 79, 177 P.3d at 1063. Undue influence may also be shown in the absence of a presumption. *See generally In re Estate of Hegarty*, 46 Nev. at 327, 212 P. at 1042. However, we have not previously determined the appropriate burden and quantum of proof required to establish undue influence in the absence of a presumption. Because neither the probate commissioner nor the district court found that a presumption of undue influence was raised in this case, we now discuss the burden and quantum of proof necessary to establish undue influence in the absence of a presumption.

*Burden and quantum of proof for establishing undue influence*

It is well-recognized that the burden of proving undue influence in a will contest is on the party contesting the will's validity. Restatement (Third) of Property: Wills & Donative Transfers § 8.3 cmt. e (2003); 79 Am. Jur. 2d Wills § 392 (2013); *Rice v. Clark*, 47 P.3d 300, 304 (Cal. 2002) ("[A] person challenging the testamentary instrument ordinarily bears the burden of proving undue influence."); *see also In re Estate of Hegarty*, 46 Nev. at 328, 212 P. at 1042 (explaining that "the evidence in this case fails to establish undue influence," suggesting the will contestant bears the burden of proof).

As to the necessary quantum of proof, Ines urges us to require a will contestant to establish undue influence by clear and convincing evidence because "undue influence . . . is a species of fraud." *In re Estate*

*of Peterson*, 77 Nev. 87, 111, 360 P.2d 259, 271 (1961) (quoting with approval a jury instruction given by the district court); *see also Heck v. Archer*, 927 P.2d 495, 499 (Kan. Ct. App. 1996) (holding that "[u]ndue influence is a species of fraud" and that "[f]raud is never presumed but must be shown by clear, satisfactory, and convincing evidence," even in regard to testamentary transfers).

Because this is an issue of first impression, we examine other jurisdictions' treatment of this issue. It appears that the majority of other jurisdictions require undue influence be proved only by a preponderance of the evidence. *In re Estate of Todd*, 585 N.W.2d 273, 276 (Iowa 1998) (recognizing that proving undue influence by a preponderance of the evidence "appears to be the majority rule" and is the rule in Iowa); *see also, e.g., In re Estate of Waters*, 629 P.2d 470, 472 (Wyo. 1981) ("The burden of proof on the issue of undue influence, which burden most courts say rests upon the contestant, is carried, in general, by a preponderance of the evidence." (internal quotation marks omitted)); *In re Estate of Garrett*, 100 S.W.3d 72, 75 (Ark. Ct. App. 2003); *In re Estate of Wiltfong*, 148 P.3d 465, 467 (Colo. App. 2006); *In re Estate of West*, 522 A.2d 1256, 1264 (Del. 1987); *Howe v. Palmer*, 956 N.E.2d 249, 254 (Mass. App. Ct. 2011); *In re Will of Elmore*, 346 N.Y.S.2d 182, 185 (App. Div. 1973); *Caranci v. Howard*, 708 A.2d 1321, 1324 (R.I. 1998); *In re Estate of Duebendorfer*, 721 N.W.2d 438, 446 (S.D. 2006); *In re Estate of Elam*, 738 S.W.2d 169, 175 (Tenn. 1987); *Cobb v. Justice*, 954 S.W.2d 162, 165 (Tex. App. 1997).

In addition, this court has previously alluded to a preponderance of the evidence standard for proving undue influence in cases involving testamentary transfers. *See, e.g., In re Estate of Peterson*, 77 Nev. at 111, 360 P.2d at 271 (approving of a jury instruction stating the

presumption of undue influence could be rebutted by a preponderance of the evidence); *In re Estate of Abel*, 30 Nev. 93, 103, 93 P. 227, 230 (1908) (explaining a finding of undue influence will not be overturned if supported by substantial but conflicting evidence). We have also recognized the importance of protecting an "'alleged donor [who] is lacking in such mental vigor as to enable him to protect himself against imposition even though his mental weakness is not such as to justify his being regarded as totally incapacitated.'" *Ross v. Giacomo*, 97 Nev. 550, 556, 635 P.2d 298, 302 (1981) (quoting with approval a jury instruction used by the district court), *abrogated on other grounds by Winston Prods. Co. v. DeBoer*, 122 Nev. 517, 524, 134 P.3d 726, 731 (2006).

We now hold that in the absence of a presumption, a will contestant must establish the existence of undue influence by a preponderance of the evidence. In order to meet this standard, the contestant must show that the disposition of property under the will was "more likely than not" the result of undue influence. *See Aguilar v. Atl. Richfield Co.*, 24 P.3d 493, 507 (Cal. 2001) (discussing the preponderance standard generally). This approach most closely aligns with our prior decisions alluding to but not expressly stating such a quantum of proof. *See In re Estate of Peterson*, 77 Nev. at 111, 360 P.2d at 271; *In re Estate of Abel*, 30 Nev. at 103, 93 P. at 230. This approach also provides the best protections to vulnerable alleged donors by making it easier for will contestants to establish undue influence. *See Ross*, 97 Nev. at 556, 635 P.2d at 302; *see also Caranci*, 708 A.2d at 1324 ("Because the perpetrator of such covert coercion generally applies the forbidden pressure in secret, one seeking to set aside such a will is often unable to produce direct

evidence of the undue influence to the factfinder but rather must rely on circumstantial evidence.").

Having determined that the preponderance of the evidence is the quantum of proof necessary to establish undue influence in the absence of a presumption, we now address whether substantial evidence supported the district court's finding that Sandra and Anita met this standard.

*Substantial evidence did not support the district court's order*

This court will not disturb a district court's findings of fact if they are supported by substantial evidence, and we review a district court's legal determinations de novo. *Clark Cnty. v. Sun State Props., Ltd.*, 119 Nev. 329, 334, 72 P.3d 954, 957 (2003). "Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion." *Winchell v. Schiff*, 124 Nev. 938, 944, 193 P.3d 946, 950 (2008) (internal quotation marks omitted).

Here, the record indicates that before Bertha's death, Ines made statements to Arlan about Sandra and Anita failing to care for Bertha, and these statements upset Bertha. While Ines and Arlan had almost daily contact by telephone after Bertha's death, Sandra testified that Arlan made the calls at least some of the time, and there was no testimony regarding the contents of these telephone conversations. Neither the probate commissioner nor the district court indicated what evidence supported the inference that Ines "mounted a campaign" or "took every opportunity to remind" Arlan that Sandra and Anita had not helped care for Bertha, and we find none in the record.

Nevertheless, the district court affirmed the probate commissioner's recommendation, concluding there was sufficient evidence that the probate commissioner could reasonably conclude that Arlan's

2007 will was the product of undue influence exercised by Ines. The district court did not explain how the facts actually supported by the record led the court to conclude Arlan's free agency had been destroyed, despite correctly stating such a requirement for establishing undue influence. *See In re Estate of Hegarty*, 46 Nev. 321, 326, 212 P. 1040, 1042 (1923).

While Ines may have influenced Arlan through frequent telephone conversations, influence resulting merely from Ines and Arlan's family relationship is not by itself unlawful, and there is no indication in the record that any influence Ines may have exercised prevented Arlan from making his own decisions regarding his will. *See id.* at 328, 212 P. at 1042. Moreover, the fact that Ines may have possessed influence does not amount to undue influence unless her influence destroyed Arlan's free agency. *See id.* at 326, 212 P. at 1042.

The record shows Ines was angry with Sandra and Anita for failing to care for Bertha, she expressed her anger before Bertha's death, Arlan shared that sentiment, he changed his will in response, and he later regretted doing so. From these facts, no justifiable inference could be drawn that Ines destroyed Arlan's free agency as to the will. *See id.* Arlan's decision to disinherit his stepchildren may "not conform to ideas of propriety," but this does not justify invalidating his will. *Id.* at 327, 212 P. at 1042.

Given "the long-standing objective of this court to give effect to a testator's intentions to the greatest extent possible," *In re Estate of Melton*, 128 Nev. ___, ___, 272 P.3d 668, 679 (2012), and the complete lack of evidence indicating Arlan's decision to change his will was anything but his own, we conclude that the district court's order affirming the probate

commissioner's recommendation is not supported by substantial evidence. Therefore, we reverse the district court's order and remand this matter to the district court. On remand, the district court shall order distribution of Arlan's estate according to the 2007 will.

_____, J.
Parraguirre

We concur:

_____, C.J.
Pickering

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

SUPREME COURT
OF
NEVADA

(O) 1947A