141 Nev., Advance Opinion 35

# IN THE COURT OF APPEALS OF THE STATE OF NEVADA

CIERAH JEANNE JOHNSON, F/K/A
CIERAH JEANNE BENNETT,
Appellant,
vs.
WILLIAM KEITH BENNETT,
Respondent.

No. 89185-COA

**FILED**

JUN 26 2025

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Cierah Jeanne Johnson appeals from a post-divorce decree order granting William Keith Bennett permission to relocate with their minor children and an order denying her motion to reconsider the same. Eighth Judicial District Court, Family Division, Clark County; Bill Henderson, Judge.

*Reversed and remanded.*

Burkett Law and Ashley D. Burkett, Las Vegas; Burton & Reardon and Michael Burton, Las Vegas,
for Appellant.

Gastelum Law and Jennifer Setters, Las Vegas,
for Respondent.

---

BEFORE THE COURT OF APPEALS, BULLA, C.J., and GIBBONS and WESTBROOK, JJ.

25-27971

*OPINION*

By the Court, WESTBROOK, J.:

In this opinion, we consider whether *Rivero v. Rivero*, 125 Nev. 410, 216 P.3d 213 (2009), *overruled in part by Romano v. Romano*, 138 Nev. 1, 501 P.3d 980 (2022), requires a district court to ascertain the "true nature" of the parties' custodial arrangement in determining whether a party to a custody agreement who seeks to relocate with a child must petition the court for primary physical custody pursuant to NRS 125C.0065. We also clarify the relocating parent's applicable burden of proof under NRS 125C.007(3) and emphasize that this burden remains at all times with the relocating parent, even when the nonrelocating parent countermoves for primary physical custody.

Dicta in *Rivero* suggests that district courts should first evaluate the parties' de facto custodial arrangement before deciding a relocation petition. However, Nevada's current relocation statutes were enacted after *Rivero* was decided. *See* 2015 Nev. Stat., ch. 445, §§ 13-16, at 2588-90. Pursuant to the plain language of these statutes, a parent's obligation to petition for primary physical custody now depends on whether joint or primary custody "has been established pursuant to an order, judgment or decree of a court," NRS 125C.006; NRS 125C.0065, not on the "true nature" of the parties' custodial arrangement. Thus, we conclude that where a stipulated custody order clearly indicates the parties' custodial arrangement, the order controls and the court generally need not evaluate the de facto custodial arrangement to determine whether NRS 125C.006 or NRS 125C.0065 applies.

Additionally, we emphasize that, regardless of whether any countermotion for primary physical custody is filed, the *relocating parent*

always bears the burden of proof to establish that relocation is in the child's best interest. *See* NRS 125C.007(3). We now clarify that, to avoid shifting this burden of proof to the nonrelocating parent, a district court must decide a pending relocation petition *before* ruling on any contingent countermotion for primary physical custody filed by the nonrelocating parent. We also clarify that the preponderance of the evidence standard applies to the relocating parent's ultimate burden under NRS 125C.007(3) to establish that relocation is in the best interest of the child.

In the present case, we conclude that the district court did not err in determining that respondent had primary physical custody of the children pursuant to the controlling stipulation and order such that NRS 125C.006, and not NRS 125C.0065, governed his relocation petition. However, because the district court erroneously decided appellant's countermotion for primary custody first, imposed a heightened burden of proof on appellant when evaluating the best interest of the children, and failed to hold respondent to his statutory burden of proof to relocate with the children, we reverse the district court's order granting respondent's petition for relocation and remand this matter for further proceedings.

## FACTS AND PROCEDURAL HISTORY

Cierah Jeanne Johnson and William Keith Bennett divorced in March 2022 and, by agreement, shared joint legal and physical custody of their two minor daughters with a week-on, week-off parenting timeshare. Johnson subsequently relocated from Las Vegas to Colorado to be with her family after her father passed away. As a result, the parties filed, and the district court entered, a stipulation and order in May 2022 (stipulation and order), providing that Bennett would have primary physical custody of the girls in Nevada and that the parties would "reevaluate the details" of the stipulation and order in one year. The parties disagree as to whether the

(O) 1947B

custody arrangement was intended to be "temporary." Nevertheless, Johnson returned to Las Vegas in May 2023 and, beginning May 29, the parties informally resumed the week-on, week-off timeshare. Despite this timeshare, Johnson did not file a motion to modify the stipulation and order that gave Bennett primary physical custody.

Shortly before Johnson returned to Las Vegas, Bennett, a United States Air Force helicopter mechanic, received notice that he would be transferred to a base in Georgia and was ordered to report no later than November 30, 2023. As a result, Bennett filed a "motion for permission to relocate to with [sic] the minor children, modify custody and related issues, and for attorney's fees and costs" (petition for relocation). In this petition, Bennett alleged that he had primary custody of the children but also requested that the district court award him "permanent" primary physical custody for the purpose of relocation.

Johnson opposed Bennett's petition, arguing that Bennett did not have primary physical custody for purposes of NRS 125C.006, because the controlling stipulation and order was "meant to be temporary" and the parties had "been exercising *de facto* joint physical custody for over four (4) months." Johnson's opposition also contained a countermotion for primary physical custody, arguing that Bennett's impending out-of-state relocation established the substantial change of circumstances warranting her request. On October 9, because Bennett's relocation to Georgia was imminent, the district court ordered that Johnson would have temporary primary physical custody of the children in Nevada pending a forthcoming hearing.

Following a three-day evidentiary hearing culminating on December 21, the district court granted Bennett's petition for relocation

with the children in a written order.[1] Initially, the court found that if Johnson had successfully compelled Bennett to "renegotiate the stipulation" as the parties originally intended to reflect joint physical custody, Bennett's request for "relocation . . . would have been a very close call." But because she did not, the court relied exclusively on the 2022 stipulation and order to find that Bennett already had primary physical custody of the children.

The district court then addressed Johnson's countermotion for primary physical custody, stating that Johnson had to "significantly tip the scales in her favor" and demonstrate that the children's lives "would be significantly enhanced" for Johnson to obtain primary physical custody. The court found that Johnson failed to demonstrate the children would be "far better off than they have always been with her or the current situation." Although the court found the best interest custody factors were all "pretty even," it nevertheless determined that Johnson was "not successful" in meeting her burden "because she would have to be [sic] significantly greater than [Bennett] on these issues."

The district court then proceeded to address the threshold relocation test and the six relocation factors under NRS 125C.007(1)-(2). In doing so, the court noted that because Bennett already had primary physical custody of the children, he "ha[d] to show a lot less to the Court for a relocation." The district court also stated that "[a]ll [Bennett] need[ed] to do [was] equal or slightly exceed what he [had] available for the children here in Nevada."

---

[1]Bennett and Johnson testified at the evidentiary hearing.

Court of Appeals
of
Nevada

(O) 1947B

Following this order granting relocation, Johnson moved for reconsideration, which the district court denied. Johnson now appeals from the district court's orders granting relocation and denying reconsideration.[2]

## ANALYSIS

Johnson argues the district court abused its discretion when it found that Bennett had primary physical custody of their children pursuant to the 2022 stipulation and order. Johnson contends that the court failed to evaluate the "true nature" of the parties' custodial arrangement as required by *Rivero* and that the court should have found the parents were exercising de facto joint physical custody over the children at the time it considered Bennett's relocation petition. She also argues the district court erred in holding her to a burden of proof higher than a preponderance of the evidence to oppose Bennett's relocation petition.

Bennett responds that the district court was not required to evaluate the "true nature" of the parties' custodial arrangement because he was seeking relocation, not a custody modification. He further contends that the district court properly relied on the 2022 stipulation and order that designated Bennett as the primary custodian, and that the district court properly evaluated his relocation request and held him to his burden as the moving party.

The district court enjoys "broad discretionary powers to determine child custody matters, and we will not disturb the district court's custody determinations absent a clear abuse of discretion." *Ellis v. Carucci*, 123 Nev. 145, 149, 161 P.3d 239, 241 (2007). "An abuse of discretion occurs when a district court's decision is not supported by substantial evidence or

---

[2]Because we reverse the district court's order granting relocation, we need not address Johnson's challenges to the order denying reconsideration.

is clearly erroneous." *Bautista v. Picone*, 134 Nev. 334, 336, 419 P.3d 157, 159 (2018). While this court gives deference to a district court's discretionary determinations, "deference is not owed to legal error." *Davis v. Ewalefo*, 131 Nev. 445, 450, 352 P.3d 1139, 1142 (2015). This court "must also be satisfied that the district court's determination was made for appropriate reasons." *Rico v. Rodriguez*, 121 Nev. 695, 701, 120 P.3d 812, 816 (2005). We review purely legal questions de novo. *Rennels v. Rennels*, 127 Nev. 564, 569, 257 P.3d 396, 399 (2011).

In this case, we conclude the district court did not err when it found, based on the 2022 stipulation and order, that Bennett had primary physical custody when he filed his petition for relocation. However, the district court abused its discretion when it addressed Johnson's countermotion for primary physical custody before considering Bennett's relocation petition, thereby shifting the burden of proof to Johnson to oppose relocation instead of placing the burden on the petitioner, Bennett. In doing so, the court imposed an undefined, heightened burden of proof on Johnson and failed to hold Bennett to his statutory burden of proof for relocation. Because we cannot say that the district court's errors were harmless, we reverse the district court's order and remand this matter for further proceedings.

*The district court properly declined to consider the parties' de facto custody arrangement in determining Bennett's custodial status*

Johnson argues that *Rivero* required the district court to consider the "true nature" of the parties' custodial arrangement in determining whether Bennett was a joint or primary custodian. In response, Bennett argues the district court was not required to evaluate the "true nature" of the custodial arrangement because he sought to relocate with the children, not to modify the physical custody arrangement.

In *Rivero*, the Nevada Supreme Court addressed stipulated custody orders and held that, when modifying such orders, "the district court must first determine what type of physical custody arrangement exists because different tests apply depending on the district court's determination."[3] 125 Nev. at 430, 216 P.3d at 227. In reaching this conclusion, the supreme court observed in dicta that the parties' de facto physical custody arrangement was also important in two other situations—when awarding child support and *when evaluating a request for relocation. Id.* at 422, 216 P.3d at 222; *see also Potter v. Potter*, 121 Nev. 613, 617-18, 119 P.3d 1246, 1248-49 (2005) (recognizing that a party seeking relocation is subject to different requirements depending on whether the party is a joint or primary custodian). "Because the physical custody arrangement is crucial in making these determinations," the supreme court set forth definitions of joint and primary physical custody to enable district courts to "evaluate the true nature of parties' agreements." *Rivero*, 125 Nev. at 422, 216 P.3d at 222. The court described joint physical custody as a parenting time arrangement where each party has physical custody at least 40 percent of the time, and primary physical custody as "encompass[ing] a wide array of circumstances" in which one party has physical custody less than 40 percent of the time. *Id.* at 425-26, 428, 216 P.3d at 224, 226.

---

[3]At the time *Rivero* was decided, a party had to establish "(1) there has been a substantial change in circumstances affecting the welfare of the child, and (2) the child's best interest is served by the modification" if they sought to modify a primary physical custody arrangement, *Ellis*, 123 Nev. at 150, 161 P.3d at 242, but only needed to show that the modification was in the child's best interest if they sought to modify a joint physical custody arrangement, *see Potter v. Potter*, 121 Nev. 613, 618, 119 P.3d 1246, 1249 (2005).

After *Rivero* was decided, the Nevada Supreme Court unified the tests for custody modification, such that the parties' de facto physical custody arrangement no longer mattered to that determination. *See Romano*, 138 Nev. at 6, 501 P.3d at 984 (stating that the "same two-part test applies to motions to modify any physical custody arrangement"), *abrogated in part on other grounds by Killebrew v. State ex rel. Donohue*, 139 Nev., Adv. Op. 43, 535 P.3d 1167, 1171 (2023). As a result, the court "overrule[d] *Rivero* to the extent it indicate[d] that a district court must first determine what type of physical custody arrangement exists before considering whether to modify that arrangement." *Id.* In doing so, however, the court did not address whether the "true nature" test might still apply in the relocation context.

The answer to this question can be found in Nevada's current relocation statutes, which were enacted after *Rivero* was decided. *See* 2015 Nev. Stat., ch. 445, §§ 13-16, at 2588-90. Although dicta in *Rivero* indicated that, in relocation cases, district courts should first consider the "true nature" of the custodial arrangement, 125 Nev. at 422, 430, 216 P.3d at 222, 227, under Nevada's current relocation statutes, district courts must instead determine whether joint or primary physical custody "has been established pursuant to an order, judgment or decree of a court," NRS 125C.006(1); NRS 125C.0065(1). Under NRS 125C.0065(1), if an order, judgment, or decree establishes that the relocating parent has *joint* physical custody, that parent must "petition the court for primary physical custody for purposes of relocating." By contrast, under NRS 125C.006(1), if an order, judgment, or decree establishes that the relocating parent has *primary* physical custody, that parent need only "petition the court for permission to relocate with the child."

At the time *Rivero* was decided, Nevada did not have separate relocation statutes for joint and primary custodians; Nevada had a single relocation statute, NRS 125C.200, which the supreme court interpreted as applying only to primary custodians. *See* 1999 Nev. Stat., ch. 118, § 2, at 737-38;[4] *see also Potter*, 121 Nev. at 617, 119 P.3d at 1249. That statute did not reference a prior "order, judgment or decree of a court" or otherwise specify the means by which a relocating parent's custodial status should be determined. *See* NRS 125C.200 (2009) ("If custody has been established and the custodial parent intends to move his or her residence to a place outside of this State and to take the child with him or her . . . ."). Rather, the legislature added the reference to a prior "order, judgment or decree of a court" in 2015, when NRS 125C.006 and NRS 125C.0065 were enacted. *See* 2015 Nev. Stat., ch. 445, §§ 13, 16, at 2588-89. Thus, *Rivero* was not constrained by statutory language when it indicated that the procedures applicable when a parent seeks to relocate with a child should be determined by "the true nature of the parties' agreement[ ]."

Now, however, pursuant to the current statutes' plain language, whether a party seeking relocation is subject to the provisions of NRS 125C.006 or NRS 125C.0065 depends exclusively on whether joint or primary custody "has been established pursuant to an order, judgment or decree of a court," not on the parties' de facto custody arrangement at the time the petition is filed. *See Stockmeier v. Psych. Rev. Panel*, 122 Nev. 534, 539, 135 P.3d 807, 810 (2006) ("If [a statute's] language is clear and unambiguous, we do not look beyond its plain meaning, and we give effect to its apparent intent from the words used, unless that meaning was clearly

_____

[4]NRS 125C.200 was substituted in revision for NRS 125A.350 in 1999.

not intended."). To construe the statutes otherwise would render this statutory language meaningless. *See Harris Assocs. v. Clark Cnty. Sch. Dist.*, 119 Nev. 638, 642, 81 P.3d 532, 534 (2003) (stating statutes should be construed in a manner that "give[s] meaning to all of their parts and language" and that does not render any part meaningless). Therefore, the district court did not abuse its discretion when it relied on the 2022 stipulation and order to conclude that Bennett had primary physical custody of the children, such that NRS 125C.006 applied.

In reaching this conclusion, we note that "[p]arties in family law matters are free to contract regarding child custody and such agreements are generally 'enforceable if they are not unconscionable, illegal, or in violation of public policy.'" *Mizrachi v. Mizrachi*, 132 Nev. 666, 671, 385 P.3d 982, 985 (Ct. App. 2016) (quoting *Rivero*, 125 Nev. at 429, 216 P.3d at 227). The terms and definitions contained within a stipulated custody order "will control unless and until a party moves to modify those terms," in which case the court will "use the terms and definitions provided under Nevada law." *Id.* at 671 & n.7, 385 P.3d at 985 & n.7 (second quotation quoting *Rivero*, 125 Nev. at 429, 216 P.3d at 227). Additionally, contract principles apply when evaluating a stipulated custody order. *See id.* at 677, 385 P.3d at 989; *see also Harrison v. Harrison*, 132 Nev. 564, 570, 376 P.3d 173, 177 (2016) (explaining that the appellate court will not rewrite a contract to include terms not agreed to by the parties). When the language of a contract is clear and unambiguous, the contract will be enforced as written. *Am. First Fed. Credit Union v. Soro*, 131 Nev. 737, 739, 359 P.3d 105, 106 (2015).

Here, the parties' 2022 stipulation and order was unambiguous and did not contain any definitions or language that conflicted with existing Nevada law defining joint or primary custody. *Cf. Rivero*, 125 Nev. at 418,

216 P.3d at 219 (evaluating the "true nature" of a stipulated divorce decree that described the parties' 5/2 custodial timeshare as one of "joint physical custody," which did not qualify under Nevada law as a joint physical custody arrangement). The order provided that "[Bennett] will have Primary Physical Custody of the minor Children" who would "reside in Nevada with [him]." The order further provided that Johnson would have parenting time during spring and summer breaks, that the parents would alternate parenting time during winter and Thanksgiving breaks, and that Johnson could request additional parenting time upon 30 days' written notice. Although the order contemplated that the parties would "reevaluate the details" of the stipulation and order after one year, there was no express agreement to modify that order in one year, nor was there any express indication that the order was intended to be "temporary."

Accordingly, we conclude the district court did not abuse its discretion in determining that Bennett had primary physical custody of the children for purposes of NRS 125C.006, as this was the physical custody arrangement provided for in the district court's 2022 stipulation and order.[5]

---

[5]Although we conclude that it is generally unnecessary to consider de facto custody status when determining whether NRS 125C.006 or NRS 125C.0065 applies, we recognize that de facto custody status may still be relevant to the court's overall relocation decision under NRS 125C.007. For instance, the petitioner must still demonstrate that the best interests of the child will be served by relocation, *see* NRS 125C.007(1)(b), and the district court may consider any "factor necessary to assist the court in determining whether to grant permission to relocate," NRS 125C.007(2)(f); *see also Potter*, 121 Nev. at 618, 119 P.3d at 1250 (indicating that, when considering a request for relocation, the district court may consider "whether one parent had de facto primary custody of the child prior to the motion"). Thus, evidence of the parties' relative timeshares may still be considered to the extent that it assists the district court in its relocation determination. *See*

*The district court abused its discretion by failing to hold Bennett to his statutory burden of proof and by imposing an undefined, heightened legal burden of proof on Johnson when opposing relocation*

Johnson further contends that the district court erred by holding her to "an undefined, yet clearly higher legal burden" than Bennett, even though Bennett was the party seeking relocation. Bennett responds that the court "clearly followed the two-pronged analysis required by NRS 125C.007" and never shifted the burden of proof to Johnson. As to these arguments, we agree with Johnson.

Whenever a parent petitions to relocate under NRS 125C.006 or 125C.0065, that parent must satisfy the requirements enumerated in NRS 125C.007(1) and (2). In doing so, the relocating parent "has the burden of proving that relocating with the child is in the best interest of the child." NRS 125C.007(3); *see Monahan v. Hogan*, 138 Nev. 58, 65, 507 P.3d 588, 594 (Ct. App. 2022) (explaining that the burden of proof provision in NRS 125C.007(3) "was the Legislature's attempt to undo the burden-shifting framework that the supreme court had established" in prior caselaw, whereby after "the relocating parent demonstrated the threshold provisions and relocation factors, the burden shifted to the nonrelocating parent to show that the move would not be in the child's best interests").

NRS 125C.007 dictates what a district court must consider in determining whether to grant a request for relocation. "NRS 125C.007 comprises NRS 125C.007(1) (the threshold test), NRS 125C.007(2) (the six relocation factors), and NRS 125C.007(3) (the burden of proof)." *Monahan*,

---

*Monahan v. Hogan*, 138 Nev. 58, 67, 507 P.3d 588, 595 (Ct. App. 2022) (holding the custody factors outlined in NRS 125C.0035 may still be relevant in relocation proceedings even if the petitioner already has primary custody).

(O) 1947B

138 Nev. at 59, 507 P.3d at 589. A relocating parent has the burden to demonstrate that the three-part threshold requirements are satisfied. NRS 125C.007(1); *see also Monahan*, 138 Nev. at 70, 507 P.3d at 597. If the district court is satisfied that the relocating parent has met the threshold test, the court must then weigh the six relocation factors set forth in NRS 125C.007(2). Finally, NRS 125C.007(3) places the burden on the relocating parent to prove "that relocating with the child is in the best interest of the child."

In *Monahan*, we clarified that a relocating parent has the burden of proving each element of the threshold test by a preponderance of the evidence. 138 Nev. at 60, 507 P.3d at 590 (concluding that "the applicable burden of proof for the threshold test is preponderance of the evidence"). While *Monahan* did not expressly address whether that same evidentiary standard would also apply to the relocating parent's ultimate burden under NRS 125C.007(3), other language in the decision suggests that it would. As this court explained, the "preponderance of the evidence [standard] is still the default evidentiary standard in family law absent clear legislative intent to the contrary." *Id.* at 69, 507 P.3d at 597 (internal quotation marks omitted).

Neither caselaw nor the current relocation statutes contemplate holding a relocating parent to a burden other than preponderance of the evidence. Thus, we extend our prior ruling in *Monahan* and clarify that a relocating parent's ultimate burden under NRS 125C.007(3) to establish that relocation is in the best interest of the child is also by a preponderance of the evidence. *See, e.g., Soldo-Allesio v. Ferguson*, 141 Nev., Adv. Op. 9, 565 P.3d 842, 849 (Ct. App. 2025) (determining that "without clear legislative intent otherwise, we must conclude that the

Court of Appeals
of
Nevada

(O) 1947B

14

evidentiary standard that applies . . . is a preponderance of the evidence" and distinguishing other statutes within the Nevada Revised Statutes that specifically require proof by clear and convincing evidence).

In this case, because Bennett was the moving party who wished to relocate over Johnson's objection, *he* bore the burden of proving by a preponderance of the evidence that relocation was "more likely than not" in the children's best interest. *See* NRS 125C.007(3); *see also In re Est. of Bethurem*, 129 Nev. 869, 876, 313 P.3d 237, 242 (2013) (explaining that the preponderance standard requires proof that a specific outcome is "more likely than not" (internal quotation marks omitted)).

Yet, before the district court considered whether Bennett had met his burden of proof under NRS 125C.007(3), it addressed Johnson's countermotion for primary physical custody. This functionally shifted the burden to Johnson to prove that it was in the children's best interest *not* to relocate, which is precisely the burden-shifting framework the legislature sought to undo by enacting NRS 125C.007(3). *See Monahan*, 138 Nev. at 65, 507 P.3d at 594. In this case, Johnson's countermotion for primary physical custody was contingent on Bennett's relocation petition: the only substantial change of circumstances identified in Johnson's countermotion was Bennett's desire to relocate.[6] Because the plain language of NRS 125C.007 assigns the relocating parent the burden of proof, the district court abused its discretion when it resolved Johnson's contingent countermotion for primary physical custody *before* addressing the merits of

---

[6]We express no opinion as to whether a district court might properly consider a countermotion for primary physical custody first when that countermotion is premised on a substantial change of circumstances other than, or in addition to, an impending relocation.

Bennett's relocation petition. By doing so, the district court effectively assigned Johnson a burden to stop the relocation by proving she should have primary physical custody. *See id.* at 61, 507 P.3d at 591.

In addition to assigning Johnson a burden to stop the relocation, the district court also appeared to find that Johnson's burden of proof was higher than a preponderance of the evidence. As noted, the court found that "[Johnson] would have *to significantly tip the scales in her favor*" in order to obtain primary physical custody "because it is not just a best interest analysis but a substantive change in circumstances in the life of the children and their lives would be *significantly enhanced* if awarded to [Johnson's] custody." (Emphases added.) The court further found that Johnson did not meet "the burden of showing that the children will be *far better off* than they have always been with her or the current situation." (Emphasis added.) To compound this error, the district court incorrectly minimized Bennett's burden of proof on his own relocation petition by finding that "[a]ll [Bennett] need[ed] to do [was] *equal* or slightly exceed what he has available for the children here in Nevada." (Emphasis added.) None of these findings comported with the preponderance of the evidence— "more likely than not"—standard. *Cf. In re Est. of Bethurem*, 129 Nev. at 876, 313 P.3d at 242.

Because the district court effectively imposed a burden on Johnson to demonstrate relocation was not in the children's best interest, required Johnson to meet that burden by more than a preponderance of the evidence, and failed to hold Bennett to his own statutory burden, we conclude that the district court's order is legally erroneous and an abuse of discretion. This is reversible error because we cannot conclude that the result would have been the same had the error not occurred. *See Soldo-*

*Allesio*, 141 Nev., Adv. Op. 9, 565 P.3d at 850; *see also In re Guardianship of B.A.A.R.*, 136 Nev. 494, 500, 474 P.3d 838, 844 (Ct. App. 2020) ("[B]ecause it is not clear that the district court would have reached the same conclusion . . . had it applied the correct standard of proof, we must reverse the district court's decision and remand for further proceedings.").

## CONCLUSION

When a party to a stipulated custody agreement petitions to relocate with a minor child, the district court is generally not required to evaluate the "true nature" of the parties' custodial arrangement in order to determine whether NRS 125C.006 or NRS 125C.0065 applies. Instead, the applicability of NRS 125C.006 or NRS 125C.0065 depends on whether joint or primary physical custody "has been established pursuant to an order, judgment or decree of a court." Further, when the nonrelocating parent files a countermotion for primary physical custody that is entirely contingent upon the pending relocation petition, a district court may not decide the countermotion first, as this impermissibly shifts the burden of proof in violation of NRS 125C.007(3).

In this case, the district court did not abuse its discretion when it determined that the parties' stipulation and order provided that Bennett had primary physical custody of the children at the time of his relocation petition. However, the district court did abuse its discretion when it decided Johnson's countermotion for primary custody before Bennett's relocation petition, imposed a heightened burden of proof on Johnson, and failed to hold Bennett to his statutory burden of proof when moving for relocation. As we cannot say that the district court's decision would have been the same absent these errors, we reverse the district court's order granting relocation

and remand this matter for further proceedings consistent with this opinion.[7]

_____, J.
Westbrook

We concur:

_____, C.J.
Bulla

_____, J.
Gibbons

_____

[7]Insofar as Johnson has raised other arguments not specifically addressed in this opinion, we have considered the same and conclude that they do not present a basis for relief or need not be reached given the disposition of this appeal. To the extent the parties contend circumstances have changed since the district court entered its order granting relocation, the parties may raise any such arguments to the district court on remand.